## In re HARPER.

(District Court, N. D. New York. January 4, 1910.)

1. BANKRUPTCY (§ 327\*)—CLAIMS—NECESSITY OF FORMAL PROOF.

An allegation in a petition in involuntary bankruptcy that a petitioner is a creditor of the bankrupt to an amount stated, and the failure of the bankrupt to answer and controvert the allegation, does not make the fact of such indebtedness res judicata as to the creditors or the trustee; but such petitioner must still file and prove his claim, which may be contested by the trustee or any creditor.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 327.\*]

2. BANKRUPTCY (§ 145\*)—PROPERTY PASSING TO TRUSTEE—RIGHTS OF ACTION.

False representations, inducing another to enter into a contract, in carrying out which, owing to the falsity of such representations, he lost money, constitute an injury to property, within Code Civ. Proc. N. Y. § 3343, subd. 10, which defines an injury to property for which an action will lie as "an actionable act whereby the estate of another is lessened, other than a personal injury or the breach of a contract"; and under Bankr. Act July 1, 1898, c. 541, § 70a (6), 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), which provides that rights of action arising from an injury to a bankrupt's property shall pass to his trustee, the right of action to recover for such false representations passes to the trustee in bankruptcy of the person injured thereby.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 145.\*]

3. SET-OFF AND COUNTERCLAIM (§ 29\*)—NEW YORK STATUTE—CLAIM FOR FALSE REPRESENTATIONS.

In an action to recover the price of goods furnished under a contract, a right of action by the plaintiff against the defendant for false representations inducing such contract is one "connected with the subject of the action," which under Code Civ. Proc. N. Y. § 501, may be pleaded as a counterclaim.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 49–51; Dec. Dig. § 29.\*]

4. BANKRUPTCY (§ 326\*)—CLAIMS—SET-OFF.

Under Bankr. Act July 1, 1898, c. 541, § 68a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), which provides that "in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid," a trustee in bankruptcy may set up as a set-off against a claim filed by a creditor a claim for unliquidated damages existing in favor of the bankrupt against such creditor which passed to the trustee, and which under the law of the state the bankrupt, but for his bankruptcy, might have pleaded as a counterclaim in an action by the creditor, and the trustee may have such claim liquidated by the referee, unless some other mode of liquidation is directed.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 326.\*]

---

**5. BANKRUPTCY (§ 4*)—CONSTRUCTION OF ACT—DEFINITION OF TERMS—"IN-CLUDE."**

In the definition of words and terms in Bankr. Act July 1, 1898, c. 541, § 1a, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), a provision that a word shall "include" a certain thing does not exclude other meanings.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 4, pp. 3499–3500; vol. 8, p. 7685.]

**6. BANKRUPTCY (§ 326*)—CONSTRUCTION OF ACT—DEFINITION OF TERMS—"DEBTS."**

In Bankr. Act July 1, 1898, c. 541, § 68a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), providing that mutual debts between the estate of a bankrupt and a creditor shall be set off against each other and the balance only allowed or paid, the word "debts" should be construed to include a right of action against the creditor for injury to the bankrupt's property, which passed to the trustee under section 70a (6), although unliquidated.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 326.*

For other definitions, see Words and Phrases, vol. 2, pp. 1864–1886; vol. 8, p. 7628.]

**7. BANKRUPTCY (§ 250*)—ADMINISTRATION OF ESTATE—DUTY OF TRUSTEE.**

It is not the privilege of a trustee in bankruptcy to use the estate committed to his charge to settle questions of law which may arise, and if success is doubtful in case of a claim alleged to be due the estate, and the result, if successful, will not enhance the value of the estate after paying the expense, it is his duty as a general rule to abandon the claim, unless at least a substantial majority of the creditors desire the litigation to proceed.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 250.*]

**8. BANKRUPTCY (§ 340*)—PROOF OF CLAIMS—SET-OFF—BURDEN OF PROOF.**

Where the debt of a creditor against the estate of a bankrupt has been duly proved, the burden of proof rests upon the trustee to establish a set-off pleaded by him.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.*]

In the matter of Howard E. Harper, bankrupt. On review of order of referee denying the motion of Peninsular Paint & Varnish Company to quash and overrule the objections filed to its claim by East Side Club and other creditors, and to quash, dismiss, and disallow the petition of the trustee in bankruptcy appointed herein, praying that said claim of said paint and varnish company be disallowed and expunged. Affirmed.

John J. Mackrell (James Farrell, of counsel), for trustee and objecting creditors.

Thomas H. Guy (H. D. Bailey, of counsel), for claimant.

RAY, District Judge. On the 26th day of February, 1908, an involuntary petition in bankruptcy was filed against the above-named bankrupt, Howard E. Harper, by Peninsular Paint & Varnish Company, and this petition alleged that such company was a creditor of said Howard E. Harper. March 12, 1908, said Harper filed a voluntary petition in bankruptcy, and filed schedules in which he states that said Peninsular Paint & Varnish Company is a creditor to the amount of about $3,500, but also sets forth that the said company is indebted to him in the sum of $6,500. The nature of this last-mentioned alleged

indebtedness will be referred to later. On his voluntary petition Harper was adjudicated a bankrupt on the 16th day of March, 1908, and thereafter, and on the 27th day of March, 1908, the two proceedings were consolidated, and Harper was adjudicated a bankrupt under the involuntary petition, also without answer or objection. No issue was raised as to the validity of the claim of the Peninsular Paint & Varnish Company by Harper or any of his creditors. After adjudication and consolidation such proceedings were had that a trustee was duly appointed. He qualified and entered on the discharge of his duties. Thereafter the said company, hereafter called the "Peninsular Company," filed its duly itemized and verified claim with the referee. It is in due form, and is a valid proof of claim on its face. Certain creditors, at the first meeting of creditors, filed objections thereto; but, for the purpose of electing a trustee. it was temporarily allowed, with the understanding that later the trustee should file objections, so as to test the validity of the claim. On the 29th day of July, 1908, the trustee filed his petition for the re-examination of such claim of the Peninsular Company. September 23, 1908, said company moved for an order quashing the objection filed by such creditors and dismissing the said petition of the trustee. The motion was based upon the petitions and proceedings for adjudication, the schedules of the bankrupt, the proof of claim of the Peninsular Company, the objections thereto, the said petition of the trustee, certain testimony given by the bankrupt on his examination in the proceedings, and on the petition filed by the trustee for a settlement of the estate of such bankrupt. The referee denied the motion to quash the objections and dismiss the petition of the trustee to re-examine the claim of said Peninsular Company, and this proceeding for a review of that decision follows.

The claim of the Peninsular Company, amounting to $3,391.17, after deducting payments and credits for discount, shortage, and merchandise returned between October 10, 1906, and October 23, 1907, is for goods, wares, and merchandise sold and delivered to said Harper between October 13, 1906, and July 18, 1907, "of the reasonable value and stipulated price of $6,272.87, no part of which has been paid, except the sum of $2,881.70, leaving a balance due, owing, and unpaid of $3,391.17, a statement of which account is hereto annexed and made a part of this proof; that said debt exists upon an open account and became due on the 5th day of June, 1907, that day being the average due date of the items of said account." The claim then proceeds as follows:

"This deponent further alleges that heretofore, and in the month of November, 1907, an account was stated between the said Howard E. Harper and the Peninsular Paint & Varnish Company, Limited, and that upon such accounting it was fixed, determined, and agreed that the said Harper was indebted unto the said Peninsular Paint & Varnish Company in the sum of $3,391.17, together with the interest thereon, from the 5th day of June, 1907, which said sum and the interest thereon said Harper promised and agreed to pay; that no part of said debt has ever been paid; that there are no set-offs or counterclaims to the same; that no note has been received for said account; that no judgment has been rendered thereon; that said corporation has not, nor has any person by its order or, to the knowledge or belief of this deponent, for its use, had or received any manner of security for said debt whatever."

A statement of items is annexed as referred to in the claim.

The objections filed by the creditors contain no denial of any allegation of the claim, but set up counterclaims alleged to exist in favor of Harper against said Peninsular Company connected with and growing out of the same transaction or transactions set forth in the claim. The objections read:

"The undersigned creditors of the above-named bankrupt do hereby object to the allowance of the claim of the Peninsular Paint & Varnish Company, of Detroit, Michigan, herein, against the bankrupt estate, upon the ground that there is a valid counterclaim existing in favor of the bankrupt and his estate against said Peninsular Paint & Varnish Company, which counterclaim exceeds in amount the claim of said Peninsular Paint & Varnish Co. against said bankrupt, and which counterclaim should be set off against the claim of said Peninsular Paint & Varnish Co., in accordance with the provisions of section 68 of the bankruptcy law. The annexed affidavit of Howard E. Harper, verified March 31, 1908, contains a statement of the basis of said counterclaim, and is made a part of this objection."

The affidavit of Harper, referred to in such objection and annexed thereto, so far as material, reads as follows:

"Rensselaer County, City of Troy—ss.:

"Howard E. Harper, being duly sworn, says that he is the bankrupt above named, and that the claim existing in his favor against the Peninsular Paint & Varnish Company, which claim is scheduled as an asset of the bankrupt estate herein, consists in substance of the following items:

"First. Damages sustained by deponent by reason of the false and fraudulent representations made by said Peninsular Paint & Varnish Company to deponent, by which deponent was induced to engage in business in the city of Troy, N. Y., in or about the month of August, 1906, as the local representative of said Peninsular Paint & Varnish Company in the sale of the goods manufactured by said company. Said representations were in substance to the effect that said company had business in this locality amounting to $20,000 per year. Said representation was false, and was known to be false by said company when it was made, and deponent relied upon such representation in making the contract, which was then made for the purchase by deponent of goods made by said Company. Deponent paid to said company about $2,300 for the first car load of paint mentioned in said contract. The purchase price of the second car load of paint mentioned in said contract amounted to about $1,900, and that amount has not been paid by deponent, but is included as a part of the claim of said company herein. By reason of the false representations made by said company to deponent, deponent has lost the $2,300 which he paid to said company, besides about 18 months' time and labor, which is worth to deponent not less than $3,000. That the business of said company in this locality did not amount to more than $5,000 per year. That the gross profits of said business, if it had amounted to $20,000 per year, would have been $4,000 per year, and the net profits to deponent would have been at least $2,000 per year. Said business amounted in fact to only $5,000 per year, and the gross profits thereof being but $1,000, there were not net profits to deponent, but an actual loss, not only of said net profits, but of money which deponent was obliged to borrow in order to carry on said business. Said amount of borrowed money amounts to at least $1,300, making the total losses sustained by reason of said false and fraudulent representations of the said Peninsular Paint & Varnish Company at least the sum of $6,600.

"Second. In and by the contract entered into between deponent and said Peninsular Paint & Varnish Company, in or about August, 1906, said company agreed to furnish to deponent the services of a capable salesman to assist deponent in disposing of the goods manufactured by said company in this locality for certain periods of the year, specified in said contract. Said company failed and neglected to furnish such salesman at the period specified in said contract, and when a salesman was eventually furnished to deponent for

a short time by said company said salesman was incapable and inexperienced, and was of no assistance whatever to deponent. That by reason of the failure of said company to carry out its contract with deponent in the respect herein referred to deponent has suffered damages in the sum of at least $1,000.

"Howard E. Harper.

"Sworn to before me this 31st day of March, 1908.

"James W. Wright, Notary Public, Rens. Co."

The verified petition of the trustee, asking that such claim be expunged and rejected, so far as material, reads as follows:

"To Edwin A. King, Esq., Referee in Bankruptcy:

"Your petitioner respectfully shows: That he is the trustee herein. That the proof of debt of the Peninsular Paint & Varnish Company, a corporation, of the city of Detroit, in the state of Michigan, claiming to be a creditor of said Howard E. Harper, was filed herein on the 31st day of March, 1908, but the same has not been allowed and should not be allowed for the following reasons:

"That said claim is based in part upon the alleged account stated between the bankrupt and said Peninsular Paint & Varnish Company, and as your petitioner is informed and believes no account was in fact ever stated between said bankrupt and the Peninsular Paint & Varnish Company, and said claim is illegally and improperly filed in so far as the consideration for said claim consists in whole or in part of said alleged account stated. That as your petitioner is informed and believes the claim of the bankrupt herein against said Peninsular Paint & Varnish Company, amounting to $6,500, which is scheduled by the bankrupt as an asset, was not included or considered in any alleged or attempted statement of account between said bankrupt and said Peninsular Paint & Varnish Company. That as your petitioner is informed and believes the said Peninsular Paint & Varnish Company is justly indebted to the bankrupt estate herein for damages sustained by said bankrupt within two years prior to the adjudication herein in an amount aggregating at least $6,500. That the claim of the bankrupt estate for said amount of damages against the said Peninsular Paint & Varnish Company exceeds in amount the claim of said Peninsular Paint & Varnish Company against said bankrupt.

"That as your petitioner is informed and believes the claim of the bankrupt estate against the said Peninsular Paint & Varnish Company arises out of the following facts: In or about the month of August, 1906, the said Peninsular Paint & Varnish Company represented to said bankrupt that said company then had a paint business in the city of Troy and vicinity amounting to $20,000 per year. The said representation was false, and was known to be false by said company when it was made, and said bankrupt relied upon such representation in making the contract which was then made for the purchase by said bankrupt of the paints manufactured by said company, and said bankrupt then engaged in the paint business in the city of Troy as representative of said Peninsular Paint & Varnish Company, in the sale of the paints manufactured by said company. That in the conduct of said business, and because of the false and fraudulent representation made by the said Peninsular Paint & Varnish Company to said bankrupt, said bankrupt lost the sum of $6,500.

"Your petitioner further shows upon information and belief: That in or about the month of August, 1906, said Peninsular Paint & Varnish Company entered into a contract in writing with said bankrupt, in and by which contract said company agreed in substance to furnish to said bankrupt the services of a capable salesman to assist said bankrupt in the disposal of the goods manufactured by said company. That said company failed and neglected to furnish such salesman at the time specified in said contract, and by reason of the failure of said company to carry out said contract said bankrupt suffered damages in the sum of at least $1,000. That the amount of all the damages sustained by said bankrupt because of the acts and omissions of the said Peninsular Paint & Varnish Company should be offset against the claim of said Peninsular Paint & Varnish Company against said bankrupt, and the claim of the Peninsular Paint & Varnish Company as filed herein should be expunged. That the attorney for the said Peninsular Paint & Varnish Com-

pany is Thomas H. Guy, Esq., of Troy, N. Y. That no previous application has been made to this or any other court for the order hereinafter asked.

"Wherefore your petitioner prays that the said proof of debt of the Peninsular Paint & Varnish Company be rejected and expunged.

"Dated Troy, N. Y., July 29, 1908.

"Frank H. Deal, Trustee, Petitioner."

It will be noted that the affidavit of Harper does not deny the sale and delivery and agreed price of the goods, wares, and merchandise, or the account stated, but sets up two counterclaims. The petition of the trustee admits the sale, etc., denies the account stated, and sets up, in substance, the same counterclaims.

The claim of the Peninsular Company is not based upon an account stated. That allegation may be wholly disregarded, and we have a complete and valid proof of claim, which, in the absence of objection, should and must be allowed as a valid claim to the amount stated. The trustee does not deny the sale and delivery of the goods to the bankrupt, the agreed price, the value, the payments, or the balance due. He simply denies that there was an account stated between the parties, which included this account.

This reduces the questions involved here to the propositions: (1) Whether or not valid actionable counterclaims or offsets are alleged; and (2) if so, can they or either of them be used to reduce or extinguish the otherwise valid, provable, and proved claim of the Peninsular Company?

The allegation in the involuntary petition, the Peninsular Company being one of the petitioning creditors, that such company was a creditor of said Harper, the alleged bankrupt, to the amount stated, and the failure to answer the petition and controvert the allegation, did not make it res adjudicata as to the creditors or as to the trustee. The Peninsular Company must still file its proof of claim and procure its allowance. Any creditor, or the trustee, may contest it. Matter of the Continental Corporation, 14 Am. Bankr. R. 538, 542, 543; In re Cleveland Ins. Co. (C. C.) 22 Fed. 204; Aspden v. Nixon, 4 How. (U. S.) 467, 498.

I agree with the dissenting opinion of Sanborn, C. J., in Ayres v. Cone et al., 14 Am. Bankr. R. 739, 746, 138 Fed. 778, 71 C. C. A. 144. Quite probably a creditor, who appears in the proceeding and contests the adjudication on the ground a petitioning creditor is not a creditor of the alleged bankrupt, would be concluded by the adjudication. Not so of those who do not appear or contest. That is not the time or place for presenting and contesting claims as such. There is no privity between the creditors, or between the alleged bankrupt and his creditors, which will bind them on the question referred to.

But this question is not very important here, as the undisputed facts show that the Peninsular Company is a creditor to the amount stated, and the question is, really, whether the trustee may prove and have liquidated an unliquidated claim for damages, or claims for damages, of the nature stated, and if such claims, or either of them, are sustained, use the recovery to reduce or "wipe out" the claim of the Peninsular Company. If the trustee had come into possession of a valid promissory note of $3,000 made by the Peninsular Company, overdue,

and belonging to the bankrupt and his estate after adjudication, is there any question that he could set it up as a counterclaim or offset to the claim of the Peninsular Company, and to that extent reduce its claim? I think not. Any debt, liquidated or unliquidated, owing to the bankrupt from a creditor of his, whether for damages or on contract, express or implied, which passes to the trustee, may, of course, be used by him to reduce the claim of such creditor when presented, or to extinguish it altogether. Section 68 of the bankruptcy act, as amended, provides:

"Set-Offs and Counterclaims.—(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." Act July 1, 1898, c. 541, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450).

By section 70 of the act it is provided, in substance, that upon his appointment and qualification the trustee shall be—

"vested by operation of law with the title of the bankrupt, as of the day he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him; * * * (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to his property."

It is self-evident, I think, that rights of action for unliquidated damages for false and fraudulent representations, or for a breach of contract, whether assignable or not, are not regarded as property under subdivision 5.

Do the objecting creditors set up, or does the trustee in his petition set up or allege, "a right of action," existing in favor of Harper, prior to his bankruptcy, "arising upon contract"? Clearly neither of them set up a right of action arising from the unlawful taking or detention of his property. Do the creditors or trustee set up a right of action arising from injury to the bankrupt's property? The first counterclaim is to recover damages for false and fraudulent representations whereby the bankrupt was induced to enter into a contract to purchase paints and to enter on the business of selling or dealing in paints, whereby it is alleged he lost the sum of $6,500. The second counterclaim is to recover damages for a breach of contract in not furnishing a capable salesman to assist Harper in the disposal of goods manufactured by the Peninsular Company. Damages in the sum of $1,000 are alleged. In the first counterclaim no breach of contract is alleged. It is a cause of action (if one is sufficiently stated) to recover damages for false and fraudulent representations made by the company, whereby, relying thereon, the bankrupt, prior to bankruptcy, was induced to enter into a certain contract to engage in a certain business, and in such business purchase his stock of the Peninsular Company, all of which he did, and because of the false and fraudulent representations inducing such contract he lost $6,500. This is not a right of action arising upon contract. Is it one arising from injury to Harper's property? Code Civ. Proc. N. Y. § 3343, subd. 10, provides:

"An injury to property is an actionable act whereby the estate of another is lessened, other than a personal injury, or the breach of a contract."

Was the making of these false and fraudulent statements an "actionable act," within the meaning of this provision of the law? No physical act is alleged which lessened the estate of Harper, unless it be that the making of false and fraudulent statements is a physical act, within the definition stated. The representations did not lessen or diminish the estate of Harper directly; but, the claim is, they induced Harper to enter into a contract which otherwise he would not have made, and that in the execution or attempted execution of same, without fault on his part and solely because of the fact that business conditions and surroundings were not as represented, he lost $6,500, and that thereby his estate was lessened to that extent. In other words, the false and fraudulent representations made to Harper by the Peninsular Company induced an act by Harper in the execution of which he lost $6,500. The gravamen of the cause of action is the false and fraudulent representations, the acts of making them; the result is damage by the loss of money belonging to Harper's estate, whereby such estate is diminished or lessened.

In Ghiglione v. Friedman, 115 App. Div. 606, 100 N. Y. Supp. 1024, the court, per Miller, J., says:

"At first blush it might appear that the term 'injury to property' included only some physical injury to tangible property; but it is defined by subdivision 10 of section 3343 of the Code of Civil Procedure to be 'an actionable act, whereby the estate of another is lessened, other than a personal injury or the breach of a contract.' It is plain from this definition that the expression 'injury to property,' as used in the act, is to be given a broad and unrestricted meaning, so as to include every invasion of one's property rights by actionable wrong, and the decisions in this State have quite uniformly construed the expression in this manner. Buckley v. Mayor, 30 App. Div. 463, 466 [52 N. Y. Supp. 452]; Stewart v. Lyman, 62 App. Div. 182, 185 [70 N. Y. Supp. 936]; Bogart v. Dart, 25 Hun [N. Y.] 395; Weiller v. Schreiber, 63 How. Prac. [N. Y.] 491; Cleveland v. Barrows, 59 Barb. [N. Y.] 364."

In that case the defendant willfully and unlawfully caused a notice of mechanic's lien to be filed on plaintiff's property upon a fictitious claim, whereby work was delayed and rental lost. This was, of course, an injury to the property and property rights of the plaintiff. The act clouded the title and delayed work thereon, to the direct injury of the property and to the pecuniary loss of the owner. In Buckley v. Mayor, etc., 30 App. Div. 463, 52 N. Y. Supp. 452, affirmed 159 N. Y. 558, 54 N. E. 1089, the owner of certain premises was constructing a vault thereon when he was unlawfully threatened with arrest in case he did not obtain and pay for a permit. Believing that the threat would be executed, he went to the department of public works and paid the necessary money and obtained a permit. Subsequently he sued to recover the money paid. The court—

"held that the rule in regard to voluntary payments was not applicable to this case, as the owner's property in a legal sense was injured by the act of the inspector and his threatened exercise of a power which the owner believed that the inspector possessed, and which was calculated to take money out of his pocket by the delay necessarily attendant upon its exercise."

The case shows that plaintiff's men engaged in the work were actually stopped from working, and the work delayed and money lost thereby, as well as in the payment of the fee for the permit. This was

an illegal actionable act, resulting directly in a lessening of plaintiff's estate or property. In Laufer v. Sayles, 5 App. Div. 582, 39 N. Y. Supp. 377, the action, amongst other things, was to recover damages for obtaining a deed of the plaintiff's premises by fraudulent representations and then disposing of such property. Held, that this was an action for injury to property, as it destroyed plaintiff's title. In Stewart v. Lyman, 62 App. Div. 182, 185, 70 N. Y. Supp. 936, the defendant made false and fraudulent representations inducing the plaintiff to purchase certain worthless shares of stock and pay $1,550 therefor, and also gave to plaintiff's assignor, one L., certain shares of such worthless stock in payment for certain services. L. assigned his claim to plaintiff. A warrant of attachment was issued, and defendant moved to vacate on the ground the complaint and other papers did not show "injury to personal property in consequence of fraud." The court said:

"Section 3343 of the Code of Civil Procedure (subdivision 10) defines an injury to property as 'an actionable act, whereby the estate of another is lessened, other than a personal injury, or the breach of a contract.' It is manifest that the acts here complained of constitute a lessening of the estate of the plaintiff and his assignor, the gravamen of the complaint being the taking away from the plaintiff of sums of money by means of fraud."

This would seem to be a plain holding that material false and fraudulent representations which induce another to part with his property constitute an actionable act causing injury to property. If so, is it not a "right of action arising from an injury to his property"? However, Harper was not induced by the false and fraudulent representations to part with any property, or to stop any work on his property, or to pay men for time idle, and he lost no rental of property. He was induced by such representations to enter into a certain contract with the one making them, to purchase and engage in an attempt to sell certain property—risk that property in business—and in and by so doing, for the reason such representations were false, he lost his money or property. His estate was lessened. In this case the Peninsular Company not only made the representations, but was the party to be benefited by the contract. Harper was to purchase of it his stock of goods, risk same in the business, and pay therefor to the company. He did under that contract purchase these goods mentioned in the claim of the Peninsular Company presented as a claim to the trustee of Harper's estate in bankruptcy. If Harper had not been adjudicated a bankrupt, and had been sued by the Peninsular Company for the price or value of the goods, he could have set up and pleaded this counterclaim. Sections 500 and 501, Code of Civil Procedure. Section 500 permits the setting up of a counterclaim, and section 501 says:

"The counterclaim, specified in the last section, must tend, in some way, to diminish or defeat the plaintiff's recovery, and must be one of the following causes of action against the plaintiff, or, in a proper case, against the person whom he represents, and in favor of the defendant, or of one or more defendants, between whom and the plaintiff a separate judgment may be had in the action:

"1. A cause of action, arising out of the contract or transaction, set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action.

"2. In an action on contract, any other cause of action on contract, existing at the commencement of the action."

This counterclaim, the one asserted by the trustee, does not arise on contract, and is not for damages for a breach of the contract on which the Peninsular Company relies; but it is a claim to recover damages resulting from the false and fraudulent representations of the party who, in effect, sues on the contract, who was a party thereto, and who induced the making thereof; and the contention of Harper's trustee is that, having been induced to enter into it by such false representations, and under and pursuant to it to purchase the goods in question and engage in the business of selling them, by reason of the falsity of such statements, he (Harper) lost his money or property.

This cause of action for the damages sustained is one connected with the subject of the action—that is, the claim of the Peninsular Company here—even if it is not one arising out of the contract or transaction on which that company bases its claim as presented to the trustee. It is a cause of action to recover damages sustained by reason of or as a consequence of the fraud perpetrated in inducing the making of the very contract the Peninsular Company relies upon as the basis of its claim, and which damages were sustained in executing or performing that very contract, so induced, for the benefit of the said company. All this is settled by the decisions of the Court of Appeals of the state of New York. Carpenter v. Manhattan Life Insurance Company, 93 N. Y. 552, 556; Thomson v. Sanders, 118 N. Y. 252, 258, 259, 23 N. E. 374. The words "subject of the action" mean "the facts constituting plaintiff's cause of action." Lehmaier v. Griswold, 10 N. Y. Super. Ct. 100, cited and approved Rothschild v. Whitman et al., 132 N. Y. 472, 476, 30 N. E. 858. The facts constituting the Peninsular Company's claim are the contract to sell goods, and the sale and delivery of said goods pursuant thereto, and a breach thereof by nonpayment. The counterclaim is that such contract was entered into because of false and fraudulent representations made by the company and relied on by the vendee or purchaser under the contract, resulting in great loss, because there was no market for the goods as represented. True, the representations preceded the contract, and the ordering and delivery of goods under it, and the loss; but they were all connected and followed in regular sequence. The case is not like Rothschild v. Whitman et al., 132 N. Y. 472, 30 N. E. 858.

I am therefore of the opinion, and hold, that the claim for damages passed to the trustee, if he has one, and that, as the Peninsular Company has presented its claim to the trustee, the trustee may establish such counterclaim before the referee, unless some other mode of establishing and liquidating same is directed.

My attention is called to In re Becker Bros., 15 Am. Bankr. R. 228, 139 Fed. 366. In that case the bankrupt had leased certain premises and was in possession. The landlord negligently allowed water to come in upon the leased premises, whereby the property of the bankrupt was injured. The landlord duly proved his claim for rent in the bankruptcy proceedings, and the trustee sought to counterclaim the alleged cause of action for such damages against the claims of the

landlord for such rent. If under the laws of Pennsylvania the negligence of the landlord in allowing water to come in on the premises leased to the bankrupt, to the injury of his property constituted and created "a right of action in favor of such bankrupt, prior to his adjudication, arising from injury to his property," such right of action passed by operation of law to the trustee in bankruptcy, and it became his duty to enforce it and collect the damages for the benefit of the estate. It would be ridiculous to say that a right of action for damages which passes to a trustee is not to be enforced and collected by him for the benefit of the estate. If, then, the one liable to the estate in an action for damages has and presents a claim against such estate, no matter what its character or how it arises, provided it be one properly provable and allowable against the estate in bankruptcy, are the trustee and referee to allow it, and pay a dividend or dividends, and proceed by action to enforce the claim for damages; or may the trustee establish the claim for damages and use it to reduce or wipe out such creditor's claim? The bankruptcy act itself says:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." Section 68a.

Subdivision "b" of the same section adds the limitation or qualification, however, that:

"A set-off or counterclaim shall not be allowed in favor of any debtor of a bankrupt which is not provable against the estate."

This is not a limitation or restriction on the right of the trustee to set up, prove, and use any claim he has and which he may enforce against a creditor of the bankrupt presenting a claim against the estate he represents, provided it be a "debt" owing by such creditor to the bankrupt estate within the meaning of section 68a. The plainly disclosed policy of the act is that where a person is indebted to the bankrupt estate, and the trustee seeks to enforce the indebtedness, the debtor to the estate may set up as an offset or counterclaim only such just demands as he has against the estate which are provable in bankruptcy as a claim against the estate, unless it be one purchased or transferred to him after the filing of the petition in bankruptcy, or within four months before such filing, with a view to such use, and with notice or knowledge that such bankrupt was insolvent or had committed an act of bankruptcy. The debtor is limited to claims provable in bankruptcy. There is no provision or suggestion in the act that a claim against a creditor of the bankrupt in the hands of the trustee, and which came to him by operation of law on his appointment, cannot be used as an offset to or counterclaim against the claim of such creditor of the bankrupt estate, unless such claim in the hands of the trustee be one of a character provable in bankruptcy in case the one liable thereon had been adjudicated a bankrupt.

Congress had a perfect right to provide that a debtor to the estate shall not be allowed to offset or counterclaim demands or claims against the bankrupt, unless they be of the class and character provable in bankruptcy, and also to provide what claims and demands and

causes of action, existing in favor of the bankrupt at the time the petition was filed, shall pass to the trustee in bankruptcy and be enforced by him, and also to provide the mode of enforcement. Is a claim for damages for false and fraudulent representations a "debt," within the meaning and intent of section 68a of the act? If so, there is no doubt of the right of the trustee to offset or counterclaim same. Section 1, subd. 11, of the act provides:

" 'Debt' shall include any debt, demand, or claim provable in bankruptcy."

It will be noted that some of these definitions in section 1 read "shall mean," while others read "shall include." It was not intended that definitions of words used in the act which read "shall include" should exclude other meanings or definitions of the word, or limit the ordinary and well-understood meanings. It was intended, as the words used plainly indicate, to make sure that they would be held to include what is expressed. If a statute should be written prohibiting the sale of all intoxicating beverages, and a section should be added saying, the words "intoxicating beverages" as used herein shall include hard cider, would an intelligent court be justified in holding that the words "intoxicating beverages," used in the act, had been defined to mean hard cider, and nothing else, and that whisky, rum, brandy, and other intoxicants were excluded, or not included? Yet cases may be found where this very interpretation has been put upon section 1 of the bankruptcy act.

It is quite true that the word "debt," given its common-law meaning, does not include a claim for unliquidated damages for false and fraudulent representations. Jackson v. Bell, 31 N. J. Eq. 554, 558; Duncan v. Lyon, 3 Johns. Ch. 351, 8 Am. Dec. 513; Berson v. Ewing, 84 Cal. 89, 23 Pac. 1112. However, the word "debt" may include claims for unliquidated damages. In re Brouillard, 20 R. I. 617, 40 Atl. 762. There Gen. Laws 1896, c. 274, § 50, provided that a discharge in insolvency should release the insolvent from "all his provable debts." The same act provided that claims for trover and torts might be proved. It was held that the word "debts" was used in its generic and not its strict legal sense, and that claims for damages for torts were released. In Rosenbaum v. United States C. S., 61 N. J. Law, 543, 40 Atl. 591, 593, it was held that the statute providing for sale and the division of proceeds amongst the creditors of an insolvent corporation in proportion to their debts included claims for unliquidated damages, and the word "debts" is used in its broad and no restricted sense. Damages for taking land is a debt due, when fixed and payable. Lowell v. Boston, etc., 106 Mass. 540.

In Berson v. Ewing, supra, the Civil Code provides that the liquidating partner may collect, compromise, or release any debts due the partnership, and pay or compromise any claims against it; and it was held that "debts" included claims—that the words were used synonymously. In New York the word "debts" includes every claim and demand upon which a judgment for a sum of money, or directing the payment of money, could be recovered in an action. Code Civ. Proc. § 2514.

A Wisconsin statute, providing that the homestead should not be liable to a forced sale "for any debt," means debts arising on contract and judgments for torts. Smith v. Omans, 17 Wis. 395, 397.

The words "debts contracted," as used in the Constitution of Michigan, are words of large import, and include all kinds of claims arising not only on contract, but in tort. Mertz v. Berry, 101 Mich. 32, 59 N. W. 445, 446, 24 L. R. A. 789, 45 Am. St. Rep. 379. See, also, Losee v. Bullard, 79 N. Y. 404; Munson v. Genesee, etc., 37 App. Div. 207, 56 N. Y. Supp. 139.

The bankruptcy act has provided that such a claim as is set up by this trustee shall pass to the trustee in bankruptcy as we have seen. It contemplates that he will do his duty, and establish and liquidate it in some court of competent jurisdiction. When so liquidated, it is a debt owing by the one against whom it is asserted beyond all question. Thayer v. Southwick, 8 Gray (Mass.) 229; Crouch v. Gridley, 6 Hill (N. Y.) 250; Johnson v. Butler, 2 Iowa, 535, 545; In re Book, 3 Fed. Cas. 867, 868. When that is done, the right of offset or counterclaim is perfect and complete. Claims of creditors are proved before the referee or court. Section 57. Section 63 states what debts may be proved; section 64 states what debts have priority; section 65 provides for the declaration and payment of dividends; section 66 takes care of unclaimed dividends; and section 67 takes care of liens. Then comes section 68, relating to "Set-Offs and Counterclaims," which is a limitation on the preceding sections relating to the allowance of claims and the declaration and payment of dividends. The provision is that:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

Who is to do this, if not the court or referee to whom the case is referred? If the court in bankruptcy is to take proof of the claim of the creditor (section 57), and state the account between such creditor and the estate of the bankrupt, and set off the claim of the one against the claim of the other (the debts due the creditors are quite generally spoken of in the act as "claims," both before and after proof and allowance, and also as debts), or, what is the same thing, the debt of the one against the debt of the other (section 68), I think it obvious that the court itself, or the referee, where the case is referred, is to take the proof of the debt or claim or right of action against such creditor. This is implied, if the greater includes the less, or if the power to do an act includes the incidental steps necessary to its performance. By subdivisions 7 and 15 of section 2, courts of bankruptcy are empowered to—

"cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided; * * * make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this act."

Taking proof to establish or liquidate a claim, or demand, or right of action for damages against a creditor who has come into the court

with a claim against the estate, and thereby made himself a party to the proceeding, and which claim may be used as an offset or counterclaim to the claim of such alleged creditor, is in my judgment a power necessarily incident to the other powers, one inherent in the court in causing the estate of the bankrupt "to be collected," and in determining "controversies in relation thereto," and one necessary to be exercised in entering such judgments "as may be necessary for the enforcement of the provisions of this act." It is impossible for this court to see how it can enforce section 68 without taking proof as to the existence of alleged offsets and counterclaims, and determining whether or not they legally exist. I find nothing contrary to the views here expressed in either Western Tie & Timber Co. v. Brown, 196 U. S. 502, 25 Sup. Ct. 339, 49 L. Ed. 571, or Libby v. Hopkins, 104 U. S. 303, 26 L. Ed. 769.

In Western Tie & Timber Co. v. Brown, supra, the bankrupt was largely indebted to the corporation. Its laborers purchased their goods of the bankrupt, and by agreement the corporation deducted from their wages the several amounts due the bankrupt for such goods and remitted to him under an agreement so to do, irrespective of any indebtedness existing between the bankrupt and Tie Company. Within the four months preceding the bankruptcy the Tie Company several times retained from the wages of such workmen amounts aggregating over $2,000, and did not remit to the bankrupt. After bankruptcy the corporation presented its claim, and set out as an offset or counterclaim, and undertook to offset or counterclaim the said amounts so deducted from the wages of workmen, and which it should have remitted. Held, that this aggregate amount was not a debt or claim owing the bankrupt estate which it could offset or counterclaim, within the meaning of section 68 of the bankruptcy act, but a trust fund in its hands; also, that to allow the offset would violate subdivision "b" of section 68. The court also held that the bankruptcy court had power, in case the Tie Company did not pay over the money so collected, to take such steps as might be lawful to protect the estate in respect to the payment of dividends. It is evident that the corporation could not legally or equitably reduce the indebtedness of the bankrupt to it in such a manner and to the prejudice of the other creditors; that is, by appropriating a fund held by it in the nature of a trust to the payment of the debt owing to it without consent of the bankrupt. The court justly said that if the parties had agreed to do that very thing it would have constituted a voidable preference, and would have violated subdivision "b" of section 68.

In F. L. Grant Shoe Company v. W. M. Laird Co., 212 U. S. 445, 29 Sup. Ct. 332, 53 L. Ed. 591, it is settled that a provable claim may be based on the breach of an express warranty; and in Crawford v. Burke, 195 U. S. 176, 193, 25 Sup. Ct. 9, 49 L. Ed. 147, that claims for fraud in general are provable against the estate of the bankrupt; but this does not necessarily mean all claims for damages for fraud. In F. L. Grant Shoe Co. v. Laird, supra, it is also decided that:

"Provable claims, on which a petition to have the debtor adjudicated a bankrupt under section 59b of the bankruptcy act can be based, are claims that can be proved in the proceedings, and a liquidation may be ordered on the

filing of the petition to ascertain whether the petition is based on a provable claim."

In other words, unliquidated claims for damages may be proved as claims in due course, or made the basis of an involuntary petition, and proved and liquidated on the question of adjudication.

I do not doubt that the claims set up by the trustee here and sought to be offset or counterclaimed passed to the trustee in bankruptcy. If he would enforce them, must he bring suit thereon for the benefit of all the creditors, collect the entire judgment for damages, if one is recovered, and apply the proceeds generally in mashaling the assets, or are they to be treated as debts owing by the creditor, and as subject to be offset when liquidated or established, and the amount due, if anything, ascertained? The latter is the construction the more favorable to the one liable in damages. He is not compelled to pay the entire recovery, and perhaps no part of it, depending on the amount of his claim against the bankrupt estate. On the other hand, if such a claim for damages is not regarded as the subject of offset within the meaning of section 68a, the trustee here must go to a foreign state and bring suit, and take his chances of making collection in case of recovery. Sections 23b, 60b, 67e. The Peninsular Company having come into this court with its claim, it has either made itself a party to the bankruptcy proceeding here, or has instituted a proceeding in bankruptcy, probably the latter. Coder v. Arts, 213 U. S. 223, 234, 235, 29 Sup. Ct. 436, 441, 53 L. Ed. 772, where it is said:

"Arts appeared in the bankruptcy court, recognizing the title and possession of the trustee in bankruptcy, asserted his claim upon the notes, and his right to have the assets so administered and paid as to recognize the validity of the lien for the security for his claim. We are of opinion that he thus instituted a proceeding in bankruptcy, as distinguished from a controversy arising in the course of bankruptcy proceedings."

In either case that claimant company is in this court seeking a dividend from the estate, and it seems clear to me that under the general policy and to answer the true purpose of the law the claim of the trustee is to be regarded and treated as an alleged debt of that company to the estate in bankruptcy, and, if established, offset or counterclaimed. There is no legal or equitable principle upon which it can be held that the creditor shall pay such claims for damages in full, if established, for the benefit of the estate, taking his percentage thereof by way of dividend on his claim when, if such claim for damages had been reduced to judgment against him prior to bankruptcy, he would be entitled to wipe it out in whole or in part by offsetting his claims against the bankrupt under section 68a. The cases all agree that a claim for damages arising from fraud or false and fraudulent representations becomes a "debt" when reduced to judgment. The bankruptcy act so treats such judgments. Section 63a. In short, if the bankrupt and the estate after adjudication owes A. $1,000 for money loaned, and A. owes the bankrupt (and the estate after adjudication) $1,000 on a judgment obtained for damages sustained by reason of false and fraudulent representations, both are debts, and must be offset under section 68a. Under the contention of the Peninsular Company here, in case such a cause of action exists in favor of the estate,

and recovery of judgment is had by the trustee after bankruptcy, the creditor is not entitled to the offset or counterclaim. I cannot assent that this is the meaning and effect of the bankruptcy act.

We come now to consider whether or not any showing is made upon which the Peninsular Company should be put to a trial of the questions referred to. In short, does the trustee in his objections assert a valid cause of action against the Peninsular Company? These objections must be tested by the same rules as would apply to a complaint setting up a cause of action. As bearing on this question there is presented the evidence given by Harper and his wife before the referee, where this question was gone into, not, however on a hearing directly in support of the objections. The allegations of the trustee are wholly on information and belief, and are presumed to be based on the statement of the bankrupt. The contract is in writing and contains this clause:

"We will give you the services of a salesman for 3 months in the spring and 2 months in the fall for the first 18 months to solicit paint business in your behalf and turn such orders in to you. Furthermore, we will at all times give you the co-operation of our regular salesman when traveling in your territory, and turn all business possible into your house."

This does not provide for an experienced salesman. The bankrupt testified that one was not furnished when he opened up the paint business in the fall, but that one came in December and remained two months. He makes no other complaint. The bankrupt accepted his services when he did come, and entered no complaint. It is not alleged or stated by Harper that one was requested at an earlier date, or that the Peninsular Company was even notified that one would be required earlier. The first sale and delivery of paints was as late as October 13, 1906. The contract was not made until September 27, 1906. Later, when called on to pay for paints delivered under the agreement, Harper promised a check of $1,000, and says he intended and expected to be able to send it, but did not. He alleged no claim for damages. It would seem clear he waived the nonarrival of a salesman at an earlier date. As to the other claim for damages for fraud in inducing the contract, the contract, so far as material, reads:

"In consideration of your purchasing a full car load of Peninsular ready-mixed paints, varnishes, specialties, etc., and handling a full stock of our goods, in a jobbing capacity, we agree to extend the following privileges: To sell you our line at the lowest jobbing price at all times, with a 60-day dating, 2% for cash in 15 days, on paints, leads, and specialties, and four months, 5% off for cash in 30 days, on varnishes. These terms to be in effect at all times, unless special datings are arranged for with our district sales manager or ourselves. Freight to be f. o. b. your city. The territory accorded you will be exclusive control of the line of mixed paint in Troy, also giving you an open territory in Eastern New York, east to the New York line, south to the Pennsylvania line, west as far as Utica, and north as far as you wish to cover."

With this contract the Peninsular Company inclosed a letter to Harper containing the following:

"We are gratified, indeed, to enter into this contract with you, and wish to assure you at the outset of our heartiest co-operation in extending your paint business. We feel confident that our united efforts will result in building up a very nice trade in your territory on our products, and we know you will never regret taking on our line."

There is nothing here that indicates an inducement to open a store and engage in this paint business. Harper states he represented that he was going to open up a wholesale glass and wall paper business. I gather, however, from the testimony of the wife, that Harper was in the telephone business until he opened the store and engaged in this paint business in the month of October, 1906. It seem that one W. J. Carlysle was the general sales manager of the Peninsular Company, and that he had the alleged talks with Harper which induced him to go into this paint business, and made the only representation alleged to be false and fraudulent. The claim is that he told Harper the company had a business in that vicinity the sales in which amounted to $20,000 per year. One Polk was then selling paints in Troy for the company, but Harper made no inquiries of him to ascertain the truth or amount of the business being done. Harper's claim is that the amount of business was only $5,000 per year, and that as it did not increase he lost the profit on sales of $15,000 worth of goods, which he would have made if the representations had been true. He says these profits would have been about $3,000. So far as appears, Harper had no money or property of his own. He borrowed from his wife, and she indorsed his note. The first car load of paint was shipped October 13, 1906, billed at $2,314.41, and Harper paid October 10th $2,268.12; the discount being $46.29. The second car load was shipped or received about November 15, 1906, on credit; but before this was done the Peninsular Company demanded and required a statement of his financial condition, and he made one which was materially false, and he made it for the very purpose of obtaining credit, all of which Harper admits. He also admits knowingly making false and fraudulent statements as to his financial condition to R. G. Dun & Co., or Bradstreet, one or both. All this goes to his credibility, but does not deprive the trustee of the right to assert and prove this claim for damages, if it has any substantial foundation.

There is no evidence that Carlysle, who did not make the contract, had power or authority to make the representations alleged. Harper soon discovered the fraud, if one was practiced, and did not rescind the contract or return the goods. If Harper's entire story is true, it is a case of "Diamond cut Diamond." It seems to me very clear that it will be a very difficult and expensive task for this trustee to establish these claims, or either of them, against the company. So far as the representations were promissory or related to future events, they create no cause of action or "actionable demand." The estate of this bankrupt is confessedly so small that the duty of the trustee requires him to protect and preserve it, and not fritter it away in an effort to save a dividend on the claim of the Peninsular Company, which cannot be as much as the expenses of a litigation in establishing it, even if successful. Evidence to establish a charge of false and fraudulent representations and reliance thereon must be credible and satisfactory and reasonably conclusive. Fraud is not presumed; it must be proved. Atlantic Delaine Co. v. James, 94 U. S. 207, 214, 24 L. Ed. 112; Watkins v. Wallace, 19 Mich. 57.

Trustees in bankruptcy are not justified in rushing the estates of bankrupts into doubtful or unproductive litigations. It is not their

privilege to use the estates committed to their charge to settle questions of law which may arise. If success is doubtful in the case of a claim alleged to be due the estate and the fruits of success will not pay the expense of cultivating the field, it is their duty, as a general rule, to abandon the claim, unless the creditors, or a substantial majority of them, desire the litigation to proceed. Referees in bankruptcy should and must see to it that estates are administered in accordance with this rule, and should exercise their supervisory power over trustees accordingly.

As to the objections filed by creditors, they are superseded by those of the trustee, who represents the creditors. This was also the understanding when the claim was allowed for the purpose of electing a trustee. It is also proper to state that under the decisions the burden is now on the trustee to prove the debts or counterclaims asserted by him. The claim of the Peninsular Company proves itself, as that company stands upon it. Whitney v. Dresser, 200 U. S. 532, 535, 26 Sup. Ct. 316, 50 L. Ed. 584; In Matter of T. A. McIntyre & Co. (C. C. A., 2d Circuit, decided Dec. 7, 1909) 174 Fed. 627.

With these suggestions as to the duty of the trustee and referee in this particular case, as it appears from the record presented, and as the court cannot dismiss the objections of the trustee, as they present a proper subject-matter, which, if established, would defeat the claim of the Peninsular Company, and this court being of the opinion that the decision of the referee was in the main right on the questions of law presented, the order under review is affirmed.