## CALDWELL v. DEAN et al.

(Circuit Court of Appeals, Fifth Circuit. December 22, 1925. Rehearing Denied January 19, 1926.)

### No. 4496.

1. **Corporations ⬤⟿318—Want of good faith of interlocking directorates in execution of long-time lease held not shown.**

Fraud or want of good faith of interlocking directorates of bank and mercantile institution in execution of long-time lease to bank *held* not established.

2. **Corporations ⬤⟿318—Excessive rental, warranting cancellation of lease negotiated by interlocking directorates, held not established.**

Excessive rental, warranting cancellation of long-time lease by mercantile to banking corporation negotiated by interlocking directorates, *held* not established, in view of oil boom existing at time of execution of lease.

3. **Corporations ⬤⟿318—Courts will closely scrutinize contracts between corporations having interlocking directorates.**

Contract between corporations having interlocking directorates, when challenged, will be scrutinized closely, and set aside, unless it appears to be fair and just in every respect.

4. **Corporations ⬤⟿59—Time of making entry in minute book not material, if entry faithfully shows what was done.**

If entry in minute book faithfully shows what was done by board of directors, it is comparatively unimportant when entry was actually made.

5. **Banks and banking ⬤⟿287(1) — Evidence held to establish ratification of lease executed between corporations having interlocking directorates.**

Evidence that Comptroller examined national bank at least three times before its failure, and made no objection to terms of lease reported to him, and that receiver made no objection until liquidation had been under way several months, *held* to establish ratification of lease, though executed between corporations having interlocking directorates.

Appeal from the District Court of the United States for the Northern District of Texas; James Clifton Wilson, Judge.

Suit by H. B. Caldwell, receiver of the First National Bank of Ranger, Tex., against S. J. Dean and others. Decree for defendants, and plaintiff appeals. Affirmed.

Virgil T. Seaberry, of Eastland, Tex. (Turner, Seaberry & Springer, of Eastland, Tex., and Chas E. Coombes, of Abilene, Tex., on the brief), for appellant.

J. M. Wagstaff, of Abilene, Tex. (Conner & McRae, of Eastland, Tex., and Wagstaff, Harwell & Wagstaff, of Abilene, Tex., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. This case may be thus stated:

On March 27, 1919, the First National Bank of Ranger, Tex., entered into a lease with the Ranger Mercantile Company, since dissolved, for a lot of ground, fronting 50 feet on Main street by 60 feet on Rusk street, in the town of Ranger, Tex., in the same square in which the bank was then located, for 99 years, at a yearly rental of $3,600, payable monthly, and with other obligations on the part of the bank as to the payment of taxes and local assessments. The lease contained the usual provisions as to building on the land, including clauses by which it might be forfeited for nonpayment of rent for 30 days after demand, in which event any improvements erected on the lot by the bank reverted to the mercantile company. In connection with the lease an option was granted by the mercantile company to the bank to purchase the property outright at any time within the calendar year 1924 on the payment of $35,000. The bank obtained possession of the property, demolished the building then on it, which was rented for $250 per month, erected its own building at a cost of $100,000, and proceeded to occupy it.

Part of the time during which negotiations were conducted for the consummation of the lease, at least four of the seven directors of the bank were also directors and stockholders of the mercantile company. The minutes of the bank for January 14, 1919, purport to contain the resolution authorizing the transaction and directing the president to execute the lease. On this day only three of the directors of the bank were interested in the mercantile company. In February, 1921, the bank failed, and in due course appellant was appointed receiver. Up to May, 1922, the receiver paid the rent without question, and from then until December, 1922, the rental was paid by him under protest. By direction of the Comptroller no rent was paid after that. In May, 1924, the receiver filed his bill to cancel the lease, mainly on the ground that the contract was unfair to the bank and void, because negotiated by the interlocking directorates of the two institutions. Other allegations of the bill are beside the issue and need not be referred to.

Appellees were the sole stockholders of the mercantile company, and answered, denying the voidability of the lease, and asking as affirmative relief that the lease be declared forfeited for nonpayment of the rent and that the land and improvements be decreed to be their property. Judgment went against appellant and in favor of appellees as affirmatively prayed for. From that judgment this appeal is prosecuted.

[1, 2] Error is assigned to the entering of the judgment. On that, as the case comes to us, the questions to be decided are as to the good faith of the directors and whether the price is so excessive as to require that the lease be annulled.

[3] There could be no dispute as to the law governing the case. It is well settled that, when a contract made by one corporation with another, through their boards of directors, having common members, is challenged, the courts will scrutinize the transaction closely, and set it aside unless it clearly appears to be fair and just in every respect.

As bearing on the question of good faith, it is contended by appellant that the entry on the minute book of January 14th is incorrect, and that the meeting authorizing the lease was not in fact held on that day, but was held either before or after. From an inspection of the entry it appears that the resolution with regard to the lease and the option is on pages that have been interleaved in the minute book. Most of the directors who testified were somewhat indefinite in their recollections as to the holding of the various meetings of the board, and as to whether they were present; but their evidence on the whole would indicate truthfulness. There is some evidence tending to show, however, that the meeting was actually held on that day, and resolutions adopted as recorded, and that two of the bank directors, who were interested in the mercantile

company, withdrew from the meeting before the vote was taken and did not participate.

[4] It is quite probable that this minute entry was corrected after its original writing to make it conform to the terms of the lease and option. But, if the entry faithfully shows what was done, it is comparatively unimportant when it was actually made. The main issue to be determined is the bona fides and fairness of the transaction. Until the action of the receiver in May, 1922, when he began to pay the rent under protest, no one seems to have objected to the execution of the lease. The directors of the bank who were interested in the mercantile company should not have acted as representatives of either side. The remaining directors, however, would have been competent to represent the bank. All the meetings of the directors appear to have been unanimous, and in view of that fact, in the absence of fraud or undue influence, the action of the board of the bank was sufficiently regular.

There was evidence from a number of unimpeached witnesses that the bank needed larger quarters; that the value of the lot leased to the bank was between $40,000 and $50,000; that a fair rental for it would have been $300 to $500 per month; that there was an oil boom at Ranger at that time; that the town had grown rapidly to between 10,000 and 15,000 inhabitants, and every one expected it to be a second Tulsa; that everything was high and going up. Of course, the expectations of the citizens of Ranger were not realized, as the boom seems to have petered out. Looking back at the transaction, it might seem to have been improvident and reckless on the part of the bank, and that the price paid was excessive; but the bargain must be viewed in the light of the circumstances as they then existed.

[5] Furthermore, it appears that after the lease was negotiated the management of the bank changed hands to a considerable extent, and the directors interested in the mercantile company were no longer in control. There is no doubt that the new management ratified the lease fully. It also appears that after the lease the bank was examined three times before its failure, and the terms of the lease reported to the Comptroller. He made no objection, although the bank was somewhat shaky. Nor did the receiver make objection until liquidation was well under way, and he thought, perhaps, he could save a little more out of the wreck for the depositors. This also constitutes ratification.

The District Judge saw and heard the witnesses. There was no evidence of fraud, nor that the interested directors unduly influenced the others. There was ample evidence to sustain the conclusions of the District Judge, and we see no reason to disagree with him.

There are other assignments of error, but, except to say they are without merit, it is unnecessary to refer to them.

Affirmed.