## HENDERSON v. BINKLEY COAL CO.
## No. 5176.

Circuit Court of Appeals, Seventh Circuit.

Jan. 3, 1935.

Morton C. Embree and Charles O. Baltzell, both of Princeton, Ind., for appellant.

Henry Adamson, Russell Blair, James H. Adamson, and Lloyd C. Adamson, all of Terre Haute, Ind., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

This appeal, which is from a decree dismissing appellant's bill to set aside, for alleged fraud, a contract executed by appellee and the bankrupt, Francisco Coal, Inc., presents two basic and determinative questions, viz.: (a) The right of the trustee of the bankrupt to maintain a suit to set aside a contract and recover damages by reason of the alleged fraud of the appellee; and (b) the sufficiency of the allegations of the complaint to state a good cause of action against appellee, assuming the trustee's right to maintain the suit.

The complaint is too long to be set forth hæc verba. It contains allegations to the effect that the appellee purchased a coal mine and organized Francisco Coal, Inc., an Indiana corporation, to which the property was conveyed; that Francisco Coal, Inc. stock consisted of one hundred shares, of which appellee owned ninety-five and the remaining five shares stood in the names of the officers and directors of appellee; that said officers and directors of appellee were by appellee elected officers and directors of said Francisco Coal, Inc.; that thereafter Francisco Coal, Inc. entered into a sales contract with appellee, which is set forth verbatim in the complaint, and which provided for the payment of what appellant claims to be an excessive and exorbitant sales service charge of 15¢ per ton for each ton of coal sold; that the appellee, through the officers and directors of Francisco Coal, Inc., mined and sold a large amount of coal, to-wit, 350,000 tons, realizing therefor about 60¢ a ton less than the cost of mining it; that prior to the making of such contract the appellee, through the common officers and directors, caused a bond issue, in the sum of $575,000, to be negotiated which was secured by the property of the bankrupt, and it was understood and agreed that the said Francisco Coal, Inc. should expend certain sums on equipment, should pay the taxes, etc.; that

said company, acting under domination of appellee, failed to pay the interest upon the indebtedness, and the trustee named in the mortgage declared the entire amount due; that the said Francisco Coal, Inc. became and is insolvent; that it was duly adjudged a bankrupt; that appellant is the trustee of the estate of said Francisco Coal, Inc., bankrupt.

The relief sought is a cancellation of the contract and an accounting and the recovery of the sum found due the estate of the bankrupt upon said accounting.

It is first contended by appellee that appellant cannot maintain this suit to recover upon the cause of action set forth in the complaint and that, if any right of recovery exists, it accrued either to the bankrupt personally or to the bondholders or other creditors of said bankrupt. In short, it is appellee's contention that the trustee in bankruptcy may not maintain this suit, which it alleges is one sounding in tort for fraud and is personal to the bankrupt.

11 USCA § 110 (a), provides for the transfer of choses in action, thus:

"(a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property."

Appellee, it seems to us, has misconstrued or misconceived the cause of action set forth in the complaint. Assuming the alleged facts to be true, a good cause of action is stated, which entitled some one to have the contract set aside and an accounting ordered.

The basis for setting aside the contract is the allegation that one of the parties to the contract owned the other party to the contract, supplied it with its directors and officers whom it dominated and which officers and directors, for the dominated company entered into a contract which was unfair and one sided and was altogether to the benefit of the holding company and to the detriment of the dominated party. Such allegations state a cause of action. For X, a corporation, can not acquire the stock of B, another corporation, name B's officers and directors, and then make a sales contract wherein B's officers and directors convey to X corporation the right to sell the coal by B mined and pay therefor an excessive price for such services. Nor can such pretending officers of B enter into a valid contract whereby X may supply coal from B's mine to one of its customers upon terms which necessitate a loss to B. Such a fact situation shows that B's officers and directors are not representing B, but X. Such a contract falls within the condemnation of Geddes v. Anaconda Copper Mining Co., 254 U. S. 590, 41 S. Ct. 209, 212, 65 L. Ed. 425, where it was said:

"The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged, the burden is upon those who would maintain them to show their entire fairness; and where a sale is involved, the full adequacy of the consideration. Especially is this true where a common director is dominating in influence or in character. This court has been consistently emphatic in the application of this rule, which, it has declared, is founded in soundest morality, and we now add in the soundest business policy."

Further citation of cases is hardly necessary, but the frequency with which the attempt by the holding company to control the action of the controlled company is made justifies the citation of a few more decisions.[1]

Not only is there a presumption against the validity of such transactions, but the allegations of the complaint before us are to the effect that an overreaching of the bankrupt by appellee in respect of commissions is affirmatively averred. The further allegation that appellee sold 350,000 tons of coal from bankrupt's coal mine for a loss of some 60¢ per ton only affirmatively charges what might be left to presumptions which arise from the execution of contracts under such unnatural and unfair circumstances.

---

[1] Corsicana Nat. Bank v. Johnson, 251 U. S. 68, 40 S. Ct. 82, 64 L. Ed. 141; Caldwell v. Dean, 10 F.(2d) 299 (C. C. A. 5); see cases collected in Page on Contracts, § 416, and in Fletcher on Corporations, §§ 2376, 2377; Alabama Fidelity Mtg. & Bond Co. v. Dubberly, 198 Ala. 545, 73 So. 911; Penn. Knitting Mills Corp. v. Bayard, 287 Pa. 216, 134 A. 397.

It is argued by appellee that bankrupt had the right to terminate the contract at any time on short written notice. But how was bankrupt to act? Obviously, through its officers and directors. They were however named and controlled by appellee. This domination therefore made the cancellation clause ineffectual and impotent.

It is needless to add that we are not passing upon the facts. We are dealing with a pleading. Upon a motion to dismiss, the truthfulness of the allegations appearing therein is assumed. Appellee may on the trial show either an absence of domination or that the contract was beneficial to the bankrupt, if such be the fact. We are here dealing with a contract between one corporation and another corporation owned by the first, whose officers and directors are the same. The presumptions arising from the establishment of such facts followed by contracts made by the two companies are adverse to the dominating corporation.

The foregoing study and analysis of the cause of action set forth in the appellant's complaint was necessary in order that we might determine whether such cause of action passed to the trustee upon the bankruptcy adjudication of the debtor. Courts are quite united in holding that some tort actions pass to the trustee under the above-quoted section of the Bankruptcy Act, while other causes of action generally designated as purely personal tort actions remain in the bankrupt.[2] In the instant suit, if we assume the cause of action is one sounding in tort and based on fraud, instead of one to set aside a contract entered into by officers of one corporation without authority so to do, it is in either case one to protect rights of the bankrupt "arising upon contracts or from the unlawful taking of or detention of, or injury to his property." The contract which appellant seeks to set aside unquestionably related to bankrupt's property. Its continued enforcement worked an injury to bankrupt's property. It was a right of action which passed to the trustee.

The decree is reversed and the cause remanded to the District Court for further proceedings in accord with the views above expressed.

[2] In re Gay, 182 F. 260 (D. C. Mass.); In re Harper, 175 F. 412 (D. C. N. Y.); McGovern v. Eckhart, 200 Wis. 64, 227 N. W. 300, 67 A. L. R. 1381; R. C. L. Bankruptcy, § 60; Connolly v. National Surety Co., 35 Ohio App. 76, 171 N. E. 870; Corpus Juris, Bankruptcy, page 139, § 220; Thomason v. Miller (Tex. Civ. App.) 4 S.W.(2d) 668.