**FLORANCE et al. v. KRESGE.**

No. 4242.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1938.

Archibald G. Robertson, of Richmond, Va. (Alvin B. Hutzler, of Richmond, Va., on the brief), for appellants.

George E. Haw, of Richmond, Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a controversy arising in the bankruptcy proceedings of J. A. Connelly individually and as surviving partner of J. A. Connelly & Co., a partnership doing a real estate rental business in the city of Richmond, Va., adjudged bankrupt in proceedings instituted May 24, 1932. The controversy relates to the right of the receivers and trustee in bankruptcy under certain contracts made with S. S. Kresge by J. A. Connelly and the partnership. Stripped of irrelevant detail, the facts out of which the controversy has arisen are as follows:

Connelly & Co., as rental agents, had rented certain property of one Cardozo to Kresge for a term ending September 9, 1937, at a rental of $916.67 per month. In 1925 Connelly & Co. subrented this property for Kresge to the General Stores Corporation for $1,166.67 per month until September, 1932, and thereafter until the end of the term at $1,333.33 per month. Kresge entered into a written contract to pay Connelly & Co., as rental agents, 5 per cent. on the rental as collected under this sublease; but it is stipulated as a fact in the cause that, by a separate contract, he agreed to pay to J. A. Connelly, for his services in obtaining a subtenant at a profit, 20 per cent. of the profit realized upon the sublease as the rental from the subtenant should be collected. Connelly & Co., the partnership, thereafter collected the rental from the subtenant and remitted to the owner of the property and to Kresge, retaining in accordance with the agreements 5 per cent. of the rental as collected and 20 per cent. of the difference between the rent due by Kresge and the amount collected from the subtenant. For some months prior to the bankruptcy, the partnership failed to remit to Kresge the amount due him from collections, so that at the time of the filing of the petition in bankruptcy it was indebted to him in the sum of $766.68 for his share of the profits of the sublease collected over a period of five months. Kresge, however, had made no protest because of this and had not suggested the termination of the agency of the partnership because of the default.

At the time of the filing of the petition in bankruptcy, the partnership was indebted to Kresge in the above-mentioned sum of $766.68 and also in the sum of $916.67, being the amount of rent collected from the subtenant for the month of April 10 to May 10, 1937, and retained by the partnership, although the amount of the collection had been paid to the landlord by Kresge to preserve his rights under the lease. Kresge accordingly had an unsecured claim against the partnership in the sum of $1,683.35, which was duly and regularly filed with the referee in bankruptcy.

Receivers appointed to take charge of the affairs of the bankrupts proceeded to enter into a contract with a real estate rental firm in Richmond, Raab & Co., under which they attempted to transfer to that company the rights of the partnership under its rental contracts in consideration of Raab & Co.'s agreeing to collect the rentals thereunder and to pay to the receivers for the estate 2½ per cent. on the amounts collected. It would appear that this contract. contemplated the division merely of the 5 per cent. commission earned by the collection of rentals and had no reference to the contract under which Connelly had been promised 20 per cent. of the profit realized upon a sublease for securing a subtenant for the property. Kresge, however, refused to permit Raab & Co. to collect the rentals due under his contract and would have nothing to do with that company.

Following the bankruptcy, the receivers through Raab & Co. collected from the subtenant $1,166.67, the amount of rent due from June 10th to July 10th. From this amount 5 per cent. commission was deducted and $191.67 tendered to Kresge, which was received by him without prejudice to his rights. The receivers tendered to the landlord Cardozo $916.67, which he refused to receive from them; and Kresge thereupon paid this rent to Cardozo and filed a petition in the court below asking that the receivers, from the money collected from the subtenant, be directed to pay this amount to him together with the 5 per cent. commission which they had retained, making a total of $975. The receivers, one of whom in the meantime had been appointed as trustee, answered the petition, claiming the right to set off against this claim of $975, and also against the

**786**

claim of $1,683.35 filed as a general unsecured claim in the cause, the amount of the 20 per cent. profit on the sublease to which we have referred, computed for the remainder of the term, and also the amount of the 5 per cent. commission on the monthly payments computed in like manner, and to recover judgment against Kresge for any balance due from him after the set-off had been allowed. Kresge denied the jurisdiction of the court of bankruptcy to pass upon the claims asserted by the receivers, or to set them off either against the claim for $975 asserted in his petition or the claim for $1,683.35 filed with the referee in bankruptcy.

The court below held that it had jurisdiction to adjudicate the claims asserted against Kresge but denied recovery thereon, holding that no rights under the contracts passed to the trustee in bankruptcy and that, in any event, Connelly & Co. had been guilty of a breach of the contract which released Kresge. Final order was accordingly entered directing the receivers and trustee to pay over to Kresge the $975 of rent collected, and approving the claim of $1,683.35 as a proper unsecured claim, upon which dividends were ordered to be paid. From this order the receivers and trustee have appealed, and four questions are presented for our determination: (1) Whether there was jurisdiction in the court below to pass upon the claims against Kresge asserted by the trustee and the receivers; (2) whether any rights under the 5 per cent. rental contract passed to the trustee in bankruptcy or the receivers of the bankrupts; (3) whether any rights under the 20 per cent. contract passed to the trustee, or the receivers; and (4) whether the trustee and receivers are precluded from relief with respect to the 20 per cent. contract because of the contract with Raab & Co.

■ We agree with the learned District Judge that the court below had jurisdiction to adjudicate the rights of the parties with respect to the claims asserted by the receivers and trustee against Kresge. The latter had made himself a party to the cause, both by filing an unsecured claim with the referee and by filing an intervening petition with the court asking that moneys in the hands of the receivers be turned over to him. Both claims related to his contract with bankrupt for the subletting of the property; and the claims asserted by the trustee and receivers were counterclaims arising out of the same contract. We see no reason why the court of bankruptcy should not pass upon the claims in favor of the bankrupt estate and set them off against the claims filed against the estate and its receivers; and, under the recent decision of the Supreme Court in Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 209, 80 L.Ed. 192, we see no reason why the court, which is a court of equity even though exercising special statutory powers, should not proceed to render judgment against Kresge for any balance found to be due by him. In the case cited, the Supreme Court reversed a decision of this court which denied the jurisdiction of a court of equity to grant affirmative relief on a counterclaim against a claimant who had filed a claim with the equity receivers, saying:

"Respondents appropriately presented their claims and became entitled to adjudication without petition for intervention, any formal pleading, or commencement of suit. Unquestionably, they submitted themselves to the court's jurisdiction in respect of all defenses that might be made by the receivers and of all objections that other claimants might interpose to the validity, amounts, or priorities of their claims. And they put themselves in position, should their interest warrant, to challenge the receivers' acts and the demands of others claiming as creditors. * * * The Circuit Court of Appeals rightly held that the District Court has jurisdiction to pass on all defenses against respondents' claims, but erred in holding it to be without jurisdiction to grant affirmative relief."

And see In re Harper, D.C., 175 F. 412, 424-426.

■ And we agree, also, with the court below in holding that no rights which could be asserted against Kresge under the 5 per cent. rental agency contract passed to the receivers or to the trustee in bankruptcy. That contract, which was in writing, provided for personal services involving a relationship of personal confidence and is to be distinguished from the oral contract under which Connelly was promised 20 per cent. of the profit for reletting the property for Kresge at an advanced rental and which had already been performed on his part. It was the usual form of rental agent's agreement, providing for the collection of rental by the agent and the payment of a commission of 5 per cent. on the rent collected. While

the rental of the premises was recited as one of the considerations for the creation of the agency, it is clear that the commissions stipulated were for services to be rendered in the collection of rental; that the agency was one based upon personal confidence; that upon the bankruptcy of the agent, the agency was terminated; and that no rights under the contract were assignable or passed to the receivers or trustee in bankruptcy of the agent. The general rule applicable in such cases was stated by Mr. Justice Gray in Arkansas Valley Smelting Co. v. Belden Min. Co., 127 U.S. 379, 387, 388, 8 S.Ct. 1308, 1309, 32 L.Ed. 246, as follows: "Every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit, and substance of the party with whom you contract.' Humble v. Hunter, 12 Q.B. 310, 317; Winchester v. Howard, 97 Mass. 303, 305 [93 Am.Dec. 93]; Boston Ice Co. v. Potter, 123 Mass. 28 [25 Am.Rep. 9]; King v. Batterson, 13 R.I. 117, 120 [43 Am.Rep. 13]; Lansden v. McCarthy, 45 Mo. 106. * * * 'Rights arising out of contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided.' Pol.Cont. (4th Ed.) 425." Delaware County v. Diebold Safe & Lock Co., 133 U.S. 473, 488, 10 S.Ct. 399, 33 L.Ed. 674; Burck v. Taylor, 152 U.S. 634, 651, 14 S.Ct. 696, 38 L.Ed. 578; Central Union Bank v. New York Underwriters' Ins. Co. 4 Cir., 52 F.2d 823, 78 A.L.R. 494. And that the bankruptcy of the agent terminates his rights under a contract involving, as here, a confidence reposed in him, see 2 Am.Jur. p. 59; A. L. I. Restatement of Agency, § 113.

■ A different situation exists, however, with respect to the contract under which Connelly was promised 20 per cent. of the profit to be derived from subleasing the property. The services which he, as agent, was to render under that contract had already been performed at the time of the bankruptcy; and nothing remained to be done on his part. While he, or the partnership which was the beneficiary of the agreement, could deduct the compensation for this service from the rental as collected, it was not compensation for the collection, the latter being covered by the 5 per cent. contract. We see no reason, therefore, why Connelly, or the partnership, would not have been entitled to the 20 per cent. due as compensation for negotiating the sublease, whoever may have collected the rental from the subtenant. It had become a right under the contract not coupled with any personal obligation or confidence and, as such, was assignable and passed to the trustee in bankruptcy under Bankr.Act § 70a(5), 11 U.S.C.A. § 110(a) (5). The rule, we think, is well settled that, "although an executory contract may be nonassignable because of its personal nature or because of a provision therein for nonassignment, nevertheless, once the contract has become executed to the extent that nothing remains to be done except the payment of money by one of the parties to the other, the claim becomes a chose in action which is assignable." 4 Am.Jur. 250; Arkansas Valley Smelting Co. v. Belden Min. Co., supra, 127 U.S. 379, 387, 8 S. Ct. 1308, 32 L.Ed. 246; Cetkowski v. Knutson, 163 Minn. 492, 204 N.W. 528, 40 A. L.R. 599, 602; Ginsburg v. Bull Dog Auto F. Ins. Ass'n, 328 Ill. 571, 160 N.E. 145, 56 A.L.R. 1387, 1390; State Street Furniture Co. v. Armour & Co., 345 Ill. 160, 177 N.E. 702, 76 A.L.R. 1298, 1305. See, also, 6 C.J.S., Assignments, 1063; Taylor v. Black Diamond Coal Mining Co., 86 Cal. 589, 25 P. 51; Lord v. Wapato Irr. Co., 81 Wash. 561, 142 P. 1172; In re Wright, 2 Cir., 157 F. 544, 18 L.R.A.,N.S., 193.

■ As the 20 per cent. contract had been fully performed on the part of Connelly, we see no ground upon which his rights or the rights of the partnership thereunder can be held to have been forfeited or recovery thereunder precluded by any breach with respect to the 5 per cent. contract. It is unnecessary, therefore, to consider whether breach of the latter by failure to pay promptly to Kresge his share of the rents collected has or has not been waived by Kresge's acquiescence in the retention by the partnership.

■■ And we do not think that the trustee and receivers are precluded from obtaining relief against Kresge with respect to the 20 per cent. contract by reason of their contract entered into with Raab & Co. It will be for the court below to decide whether the assignment to Raab & Co. was intended to have or did have any re-

788

lation to the 20 per cent. contract, which had already been performed on the part of Connelly so that the amount due him or the partnership thereunder had already been earned; but it seems hardly probable that the court intended to approve the transfer of this asset of the bankrupt, representing compensation already earned, along with the agency contracts under which Raab & Co. were to divide the commissions on rentals subsequently collected. But, be that as it may, the claim under the 20 per cent. contract was an asset of the bankrupt estate at the time of the filing of the petition, and as any rights of Raab & Co. have resulted from orders entered in the cause, it is proper that that company be made a party to the proceeding to adjudicate the rights of the parties with respect to that claim. The court below will accordingly have Raab & Co. made a party to the proceeding so that it may come in and assert any interest which it may claim with respect to the 20 per cent. contract, and will then proceed to adjudicate the rights of the parties in accordance with the principles here laid down.

Affirmed in part, reversed in part and remanded.