## In re PETROLEUM CONVERSION CORP.

### No. 1464.

United States District Court
D. Delaware.

Aug. 24, 1951.

900

William E. Taylor, Jr., of Wilmington, Del., for petitioner.

Thomas Cooch (of Morford, Bennethum, Marvel & Cooch), of Wilmington, Del., for trustee of debtor.

LEAHY, Chief Judge.

This is a petition for review of a judgment entered by the referee in bankruptcy against James A. Vaughan on a set-off and counterclaim asserted by the trustee. On July 19, 1948, Petroleum Conversion Corporation—the debtor—filed a voluntary petition in bankruptcy. The proceeding was referred to Stewart Lynch, Esq., referee and William M. Duffy, Jr., Esq., was elected trustee. On November 19, 1948, Vaughan, petitioner here, filed two claims against debtor with the trustee: (1) a claim for a promissory note of debtor held by Vaughan in the sum of $318; (2) a claim for the unpaid balance of a legal retainer allegedly owed Vaughan by Debtor for $2,000. The creditors' first meeting was held in August, 1948; and, at a subsequent adjourned first meeting on January 19, 1949, Vaughan appeared and testified.[1] On August 26, 1949, the trustee filed objections to each of petitioner's asserted claims. Debtor asserted a counterclaim or set-off against Vaughan in an amount at least equal to the amount of each of his claims would be made. In addition to the claim by Vaughan for an unpaid legal retainer, the trustee made further objection Vaughan was "disqualified from receiving compensation for legal services in that he had and served conflicting interests"; and, finally, payments by debtor in the past to Vaughan had been far in excess of the value of his alleged services rendered.[2] On October 3,

1. On September 28, 1949, another meeting of creditors was held of which Vaughan had notice. Though Vaughan did not appear at this meeting, he was represented by counsel. Vaughan, however, was present and testified at a creditors' meeting held December 6, 1949. The record does not reflect any objection by Vaughan or his counsel at any of these meetings to the referee's exercising summary jurisdiction on the claims in suit.

2. In the objection, the trustee stated he

1949, the trustee filed his formal set-off and counterclaim in which he claimed Vaughan while serving as a paid officer and attorney for debtor actively participated in litigation adversely to the interest of debtor. The trustee set forth sums Vaughan actually received as vice president of debtor and as retainer for his alleged legal services. The trustee stated Vaughan had such intimate knowledge of debtor's affairs as to charge him with knowledge the salary and fees being paid him were unjustifiable so as to make it inequitable for him to accept and retain the amounts he received.[3]

On November 1, 1949, Vaughan filed an "Answer to the 'Set-off and Counterclaim [etc.]'". No objection to the referee's jurisdiction or to a summary proceeding was made. During February-March, 1950, both the trustee and petitioner filed proposed findings of fact and conclusions of law with the referee. Petitioner did not propose a conclusion the referee lacked jurisdiction to determine the set-off and counterclaim. Then on July 6, 1950, the referee filed his findings of fact, conclusions of law, and opinion. On July 7, 1950, certain corrections were made and the whole was refiled. The referee concluded he had jurisdiction to enter judgment against Vaughan for the amount determined to be due and owing by Vaughan under the set-off and counterclaim asserted by the trustee.[4] In his opinion, the referee noted the petitioner had not made any objection to the summary jurisdiction of the referee.[5].

---

believed the "alleged services were without value to the bankrupt."

3. The trustee alleged during the period from 1938 to 1948 inclusive, Vaughan was paid by debtor the following amounts:
Salary as Vice-President,
1944–8 ................ $13,250.00
Retainer for Legal Services,
1938–48 .............. 39,224.62
Legal fee, Dickinson case,
1946 ................. 3,500.00
The trustee further alleged debtor ceased operations in 1944. The gross income for 1946, 1947 and 1948, respectively, was $6,611.82, $5,117.97, and $1,230.35. Net losses for these three years were, respectively, $30,007.85, $20,176.13, and $10,321.40.

4. Conclusion of Law No. 11.

5. "Second: By filing his claims in this proceeding and his conduct subsequent thereto, Mr. Vaughan submitted himself to the summary jurisdiction of this court.
"This question of jurisdiction has caused me much difficulty. *The odd fact is that the claimant has never challenged the . jurisdiction of the Bankruptcy Court for the District of Delaware to enter an affirmative judgment against him for the amount found due on the Counterclaims.* It was the attorney for the Bankrupt who raised the point. I have been unable to find any authority which would support the Bankrupt's position in this respect, and have so held in Conclusions of Law No. 11 and No. 12.
"The claimant filed his claims in this proceeding, and this alone is sufficient to vest jurisdiction in this Court over him and the subject matter of his claims and the set-offs and counterclaims asserted against such claims, see decisions cited in the Conclusion of Law No. 10.
"The claimant, however, went further than merely filing his claims. He appeared in the proceedings several times, and without objection, submitted himself to questioning by the parties and counsel and has himself presented evidence on the set-offs and counterclaims asserted against him by the trustee.
"It may perhaps have been possible for the claimant to have entered what would have amounted to a special appearance in this proceeding, simply by objecting to the Trustee's set-offs and counterclaims on the ground of lack of jurisdiction, and/or by withdrawing his claim. He did not do so but he saw fit to contest the set-offs and counterclaims on the merits.
"Under these circumstances, therefore, it must be held that he has consented to jurisdiction and the consequent decision against him." Referee R. pp. 34–5. (Emphasis supplied.)

The referee's reference to the attorney for debtor raising the question of jurisdiction obfuscates further what is, at best, a confused definition of the legal issue for decision. If the referee meant the trustee's attorney objected to the exercise of summary jurisdiction by the referee, obviously the trustee had no authority to sustain his position, for Sec. 23 "relates only to suits in which the trustees are plaintiffs." Ex parte Baldwin, 291 U.S. 610, 617, 54 S.Ct. 551, 554, 78 L.Ed. 1020; 2 Collier on Bankruptcy, par. 23.08[5], p. 528 ("Where an adverse claimant to property voluntarily submits the question of his claim for de-

The referee determined: (1) Vaughan was not entitled to the $300 per month retainer from debtor for legal services from April 14, 1942 to July, 1948;[6] (2) the $3,500 paid Vaughan by debtor in 1946 for his alleged services to debtor in the Dickinson-Rinke litigation was not a legally authorized expenditure by debtor;[7] (3) Vaughan's claim for the $318 on the note should be allowed with interest of 6% from September 1, 1942 to July 19, 1948, but his claim for $2,000 as an unpaid retainer fee for legal services to debtor should be disallowed; (4) the set-off and counterclaim to Vaughan's claims should be allowed in part, and the trustee should recover from Vaughan $20,350 paid to Vaughan from April, 1942, to December 15, 1947, as retainer for legal services[8] and $3,500 paid to Vaughan as his fee in the Dickinson case.[9] The referee decided against the trustee's set-off and counterclaim for salary received by Vaughan as vice president of debtor and this claim against Vaughan was disallowed as not being mutual within the Bankruptcy Act.

On July 13, 1950, Vaughan for the first time filed written objection to the referee's exercising summary jurisdiction to determine the merits of the trustee's set-off and counterclaim. The next day, the referee filed an opinion on the protest in which he held it was not a "timely objection" because petitioner had "submitted himself to the full jurisdiction of this court." On September 7, 1950, the referee entered final judgment for the trustee against Vaughan in the amount of $30,841.59.[10] This is the judgment of which review is sought.

In this petition for review, various alleged errors of the referee are assigned. I do not pause to examine each of the assigned errors at length, since in the briefs and oral argument before me, petitioner relies solely on the contention the referee's assumption of summary jurisdiction to determine the merits of the set-off and counterclaim filed by the trustee was contrary to law, and, in fact, petitioner alleges the referee was without jurisdiction to hear the merits of the claim, counterclaim and set-off. It is important to note, however, in three of the assigned errors it is alleged the referee's conclusion is "against the evidence and the law",[11] which indicates, as the record shows, petitioner met the evidence offered by the trustee and joined issue and grappled with him on the merits. Thus, the question

termination by the bankruptcy court, jurisdiction is conferred by consent, and the trustee or receiver cannot be heard to object."); see authorities cited, *idem*, n. 54.

If, however, the referee means the attorney for debtor raised the question of summary jurisdiction to put the petitioner on notice and the petitioner still proceeded to a hearing on the merits and final determination by the referee without objecting to summary jurisdiction, the petitioner's stand in the case for review is consequently and clearly much weaker.

6. The Referee found as a fact Vaughan when acting from April 14, 1942 on, as counsel for a group known as the Rinke Agency subscribers, of which Vaughan was a member, was representing an adverse interest to that of Debtor. The Referee further found Vaughan had "presented no evidence that he rendered legal services to [the Debtor after April 14, 1942] other than in connection with the Dickinson-Rinke Litigation." Finding of Fact No. 41. In the litigation referred to, Vaughan from April 14, 1942 on, represented the Rinke Agency subscribers. Finding of Fact No. 38.

7. Finding of Fact No. 46.

8. 
| 1942 | $2,250.00 |
|------|-----------|
| 1943 | 3,900.00 |
| 1944 | 3,600.00 |
| 1945 | 3,600.00 |
| 1946 | 3,600.00 |
| 1947 | 2,700.00 |
| 1948 | 700.00 |

9. The referee allowed interest to the trustee at 6% on the amount of each item listed in n. 8, supra, and also on the $3,500 Dickinson fee, from December 31 of its respective year of payment to the date of his order, September 7, 1950. The interest totals $6,991.59.

10. Vaughan on September 27, 1950, filed a motion for a rehearing on both the question of the referee's jurisdiction and the merits of the trustee's set-off and counterclaim. The motion was denied by the referee on October 20, 1950.

11. Petition for review filed October 20, 1950, paragraphs Nos. 1, 2 and 5.

which this petition for review poses is, "Did the referee have jurisdiction to determine the merits of the trustee's counterclaim and set-off to petitioner's claim by way of a summary procedure?"

Petitioner makes several arguments to support his position the referee improperly exercised jurisdiction. He asserts the adverse claims of himself and the trustee are substantial and not colorable or frivolous and the bankruptcy court is without jurisdiction to determine them in a summary proceeding. He also argues the referee "has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial * * *. Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily." [12] In short, petitioner claims his claim is a substantial adverse claim and the trustee should have been forced to resort to plenary action and independent suit. Petitioner also asserts the bankruptcy court "does not have jurisdic-

tion to determine an adverse claim to property in possession of the claimant based on a transaction prior to the bankruptcy". Petitioner argues further timely objection was made to the exercise of summary jurisdiction by the referee and the facts here fall within the situation in Cline v. Kaplan.[13] Finally, petitioner urges the claims alleged by the trustee against petitioner are not proper claims to be asserted as a set-off or counterclaim in that the claims asserted by the trustee are not "mutual" in the sense required by Sec. 68, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 108, sub. a.

1. Petitioner's first argument rests upon the assumption the referee in the first instance had the duty to examine petitioner's claims adverse to the bankrupt estate to ascertain whether or not he had jurisdiction. None of the authorities and cases relied upon by petitioner lend support to the petitioner's situation here. The facts of this case are petitioner himself entered the bankruptcy court and filed two claims against debtor.[14] After the trustee asserted his set-off and counterclaim, petitioner answered on the merits. The record

12. Cline v. Kaplan, 1944, 323 U.S. 97, 99, 65 S.Ct. 155, 156, 89 L.Ed. 97.

13. Supra, n. 12.

14. The cases cited by petitioner all involved situations where the *trustee initiated* the proceedings against the adverse claimant: In re Meiselman, 2 Cir., 1939, 105 F.2d 995 (trustee sought a turnover order from the referee in bankruptcy in a summary proceeding); Cline v. Kaplan, 1944, 323 U.S. 97, 65 S. Ct. 155, 89 L.Ed. 97 (trustee sought a turnover order from the referee in bankruptcy in a summary proceeding); May v. Henderson, 1925, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870 (trustee in bankruptcy petitioned the bankruptcy court for an order directing the respondents, as assignees, to account for and pay over all moneys received by them from the date of assignment to the date of the appointment of the receiver); Fish v. East, 10 Cir., 1940, 114 F.2d 177 (turnover order sought by trustee in summary proceeding); Ford v. Magee, 2 Cir., 1947, 160 F.2d 457 (trustee in bankruptcy sought turnover order from bankruptcy court in summary proceeding); McClelland v. Greenberg, 2 Cir., 1944, 142 F.2d 245 (trustee in bankruptcy sought show cause order against adverse claimant in summary proceeding before referee in bankruptcy after ruling in state court proceeding adverse to trustee); Taubel-Scott-Kitzmiller Co., Inc., v. Fox, 1924, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (trustees sought by a summary proceeding before the referee to have an execution lien declared void and obtain possession of property); In re Roman, 2 Cir., 1928, 23 F.2d 556, (receiver, later trustee, sought an order requiring adverse claimants to show cause why they should not pay to him the amount of a settlement allegedly previously agreed upon between bankrupt and adverse claimants); In re Standard Gas & Electric Co., 3 Cir., 1941, 119 F.2d 658 (special trustee brought plenary action); In re Joslyn's Estate, 7 Cir., 168 F.2d 803 (trustee petitioned bankruptcy court for turnover order against adverse claimant in summary proceeding); Duda v. Sterling Mfg. Co., 8 Cir., 1949, 178 F.2d 428, 14 A.L.R.2d 899 (reorganization trustees sought order against alleged debtor of reorganization corporation to show cause why judgment should not be entered against him in favor of trustees on several separate and distinct causes of action).

shows no objection by petitioner to the summary power of the bankruptcy court until after the referee filed his findings of fact and conclusions of law. Only then was the referee's exercise of summary power disputed by petitioner. The authorities are clear a preliminary inquiry is necessary "where the summary power of the bankruptcy court is disputed," [15] but petitioner cites no case holding a bankruptcy court erred in not conducting a preliminary hearing where it was the adverse claimant, not the trustee, who first invoked the court's jurisdiction and the adverse claimant proceeded to answer and argue the trustee's set-off and counterclaim on the merits to a final determination by the referee before objecting to jurisdiction. More than that, no authority has been found for the proposition a plenary proceeding must be forced upon a petitioner in bankruptcy where the petitioner manifests all the indicia of consent to a summary proceeding and, in truth, invites himself into the bankruptcy proceedings. The authorities, in fact, are agreed the privilege of trial by plenary suit may be waived by a defendant even where the trustee has initiated the summary proceeding.[16] Where claimant himself invokes the court's jurisdiction by filing proof of claim, there seems to be no question he consents to the jurisdiction of the bankruptcy court "to render an affirmative judgment against the creditor on the trustee's counterclaim arising out of the same transaction".[17] I am in complete agreement with Professor Moore "this view has considerable merit in the light of expeditious administration of bankrupt estates and the avoidance of multiplicity of litigation".[18]

■ 2. One of the petitioner's other points is bankruptcy courts do not have jurisdiction to determine an adverse claim to property in possession of the claimant based on a transaction prior to the bankruptcy. Here again, as in his first argument, petitioner apparently brushes aside as if it were of no consequence the fact the trustee in the matter at bar did not initiate these proceedings. All the cases on which petitioner relies are ones in which the trustee initiated the summary proceeding.[19] In addition, in all the cited cases the adverse claimant did not consent to the exercise of summary jurisdiction. I may be monotonous in repeating petitioner came into the bankruptcy court, here, voluntarily and thus initiated the litigious issue for decision on the merits—in fact, he underscored his consent to the exercise of summary jurisdiction by the referee. As Duda v. Sterling Mfg. Co., 8 Cir., 178 F.2d 428, 14 A.L.R.2d 899 plainly implies, if the adverse claimant consents, the bankruptcy court has summary jurisdiction to determine title to property held adversely to the bankrupt estate where the property in question came into the possession of the adverse claimant prior to the filing of the petition in bankruptcy.[20]

15. 2 Collier on Bankruptcy (14th edition) par. 23.07, p. 506.

16. "Thus where the defendant by appearance and pleading on the merits submits himself to the summary jurisdiction of the referee, or otherwise waives the privilege of trial by plenary suit, the referee possesses the power to hear and determine the issues presented." 2 Collier on Bankruptcy, par. 38.09, pp. 1424–5, citing MacDonald v. Plymouth County Trust Co., 1932, 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093, 20 Am.Bankr.Rep.,N.S., 1, noted 42 Yale L.J. 262.

17. 2 Collier on Bankruptcy, par. 23.08 [6], pp. 530–32 and at 531; "Thus where a claimant presents his claim to the bankruptcy court he must be deemed to have consented to the jurisdiction of the court to decide any questions that may be lawfully interposed * * *". 2 Collier on Bankruptcy, par. 38.09, p. 1424, n. 46. In re Gillespie Tire Co., D.C.W.D.S.C., 54 F.Supp. 336, 339–340; In re Park Beach Hotel Bldg. Corp., 7 Cir., 96 F.2d 886, certiorari denied Pancoe v. Southman, 305 U.S. 638, 59 S.Ct. 105, 83 L.Ed. 411; Florance v. Kresge, 4 Cir., 93 F.2d 784, 786.

18. 2 Collier on Bankruptcy, par. 23.08[6], pp. 531–32.

19. Taubel-Scott-Kitzmiller Co., Inc., v. Fox, supra, n. 14; May, Trustee v. Henderson, id.; In re Roman, id.; In re Standard Gas & Electric Co., id.; In re Joslyn's Estate, id.; Duda v. Sterling Mfg. Co., id.

20. It should be noted in the Duda case

3. Petitioner comes to the argument timely objection was made by him to the exercise of summary jurisdiction by the referee, and the facts in the case at bar are within those of Cline v. Kaplan.[21] The Cline case, despite the expressed intention of the Supreme Court to remove the doubts about bankruptcy summary administration occasioned by "conflicting views * * * in different circuits", sets forth a rule which has, as the legal literature has suggested, confused rather than clarified bankruptcy practice.[22]

The rule of the Cline case is that participation in a summary action without preliminary jurisdictional objection does not constitute a waiver thereof if "formal" objection is made before the final order is entered.[23] Adopting this rule as a fair and I hope an accurate statement of the Cline decision, the question arises: "Do the facts of the matter at bar bring the petitioner within the Cline case?"

Putting aside for the moment the fact petitioner voluntarily came into the bankruptcy court and asserted a claim against debtor,[24] the basic question arises did petitioner consent to summary jurisdiction here. As the Cline case notes, consent is a "question depending on the facts of the particular case."[25] In the Cline case the hearing in which the adverse claimant there participated before objecting formally to summary jurisdiction was, according to Mr. Justice Frankfurter, " * * * held to determine whether the property was in the constructive possession of the bankrupt." [26] Hence, the hearing was apparently confined to the jurisdictional issue. Before the close of the hearing, the adverse claimant orally moved to dismiss the proceedings for want of summary jurisdiction.[27] Summary jurisdiction, therefore, was apparently attacked in the Cline case before the adverse claimant had participated in any hearing on the merits. The plain fact evident from the record before me is petitioner objected to the referee's jurisdiction for the first time *after* the referee had determined the issues on the merits and filed his opinion. Though the language of the Cline case is that objection to jurisdiction may be made any time before "final order", I cannot read the Cline case to mean a litigant may wait on second base and see which way the ball will bounce in center field and then run accordingly for third. Here, petitioner learned from the referee's opinion he had lost and then, before a final order was entered, he made his objection. Even adopting the Cline case rule, which in passing I note does not even consider F.R. 12(h),[28] I hold the Cline case can afford the petitioner no consolation.

the trustee not only initiated the proceeding, but, moreover, the adverse claimant reserved his objections to the court's summary jurisdiction throughout the trial. Id., 178 F.2d at page 434.

21. Supra, n. 12.

22. For an able critique of the Cline case, see 2 Collier on Bankruptcy, par. 23.08[4], pp. 520–28. See also authorities cited in notes 43 and 44 therein.

23. The statement of the rule is taken from 2 Collier on Bankruptcy, par. 23.08[4], p. 525, where it is said, "this has been the view of the case subsequently expressed by a majority of the courts and commentators". Ibid. For other interpretations of the Cline rule, see 2 Collier on Bankruptcy, par. 23.08[4], p. 524.

24. The Cline case involved a turnover proceeding brought by the trustee. This factual difference itself is sufficient to distinguish the two cases.

Filing of a proof of claim, it has been held, constitutes sufficient consent for the bankruptcy court to render an affirmative judgment against the creditor on the trustee's counterclaim arising out of the same transaction. Florance v. Kresge, 4 Cir., 93 F.2d 784; 2 Collier on Bankruptcy, par 23.08[6], pp. 530–532.

25. Cline v. Kaplan, supra, 323 U.S. at page 100, 65 S.Ct. at page 157.

26. Id., 323 U.S. at page 98, 65 S.Ct. at page 156.

27. Id.

28. The Federal Rules of Civil Procedure, 28 U.S.C. are generally applicable in bankruptcy proceedings under General Order 37, 11 U.S.C.A. following section 53. Federal Rule 12(h) provides all de-

4. Petitioner's final argument is the claims alleged by the trustee against petitioner are not proper claims to be asserted as a set-off or counterclaim since the claims asserted by the trustee are not "mutual" in the sense required by § 68, sub. a of the Bankruptcy Act.[29] The petitioner relies upon the case of United States v. Roth, 2 Cir., 164 F.2d 575 and urges in effect the trustee's claim here is an equitable claim, existing only in the trustee for the benefit of creditors and does not exist in the debtor. Yet, petitioner asserts his claims are against the bankrupt for money owed and for compensation for professional services. In the Roth case the trustee there asserted a right to a refund of the bankrupt's overpayment of his 1937 income tax against the claim of the Government for unpaid taxes for the years 1938, 1942 and 1943. The Court sustained the trustee's right to set-off his claim for a refund. It is the second claim of set-off in the Roth case pertaining to the fraudulent payment of $1,500 to the Government when the debtor was insolvent which the petitioner here seeks to analogize to the instant case. The analogy fails, upon analysis because, unlike the instant facts, in the Roth case, the bankrupt had no right to recover the $1,500 payment from the Government. The right there was only an equitable right in the trustee to recover for the benefit of Roth's creditors. Why the right represented in the counter-

claim here never belonged to the debtor, petitioner never has made clear.

Clearly debtor, in the matter at bar, absent bankruptcy, could have sued petitioner to recover back the moneys paid him while he allegedly was acting adversely to debtor's interest. I see no reason why the trustee cannot maintain the same equitable claim here. In the Roth case the bankrupt's payment to the Government was in fraud of his creditors and the court properly held the voluntary payment was beyond recall by the transferor.[30] But the right in the instant case was a right in debtor to recover overpayments of attorney's fees to the petitioner. The claim of petitioner against debtor for attorney's fees and the counterclaim and set-off it asserts against him both existed before the adjudication of the debtor as bankrupt.[31] I agree with the referee's conclusion debtor's claims against petitioner's compensation as corporate attorney for debtor and his fee for services in connection with the Dickinson-Rinke litigation are mutual, as they apply to petitioner in his capacity as corporate attorney for debtor.[32]

The findings of fact, conclusions of law and opinion of the referee, as well as his order of September 7, 1950, are affirmed. The prayers of the petition for review are denied. An order may be submitted in accordance with this opinion.

fenses not raised by preliminary motion or by answer are waived, with certain exceptions not important here. This Circuit has applied the rule in a case where the defendant's answer to a turn-over petition failed to question jurisdiction. Moonblatt v. Kosmin, 3 Cir., 139 F.2d 412; 2 Collier on Bankruptcy, par. 23.08[4], pp. 525–26.

29. 11 U.S.C.A. ch. 7, § 108. "§ 68. Set-offs and counterclaims
"a. In all cases of mutual debts or mutual credits between the estate of a

bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

30. United States v. Roth, 2 Cir., 164 F.2d 575, at page 578.

31. Id.

32. Conclusion of Law No. 10, Referee R., p. 10; In re Harper, D.C.N.Y., 175 F. 412, 422; 4 Collier on Bankruptcy, par. 68.04, pp. 721–723 and par. 68.13, p. 756.