In the Matter of FARRELL PUBLISHING CORPORATION, Bankrupt.

No. 90293.

United States District Court
S. D. New York.
April 6, 1955.

William T. Coleman, Jr., Dilworth, Paxson, Kalish & Green, Philadelphia, Pa., for Cuneo Eastern Press, Inc., of Pennsylvania. Jas. Maxwell Fassett, New York City, of counsel.

Benedict Ginsberg, New York City, for trustee.

IRVING R. KAUFMAN, District Judge.

The Court has before it a petition to review an order of the Referee in Bankruptcy dated March 1, 1955. The petition is filed on behalf of Cuneo Eastern Press, Inc. of Pennsylvania (hereinafter "Cuneo"). It objects to the order on the ground that the Referee had refused to dismiss the trustee's counterclaim which had been filed against Cuneo. Cuneo insists that the Bankruptcy Court has no jurisdiction to rule on the counterclaim.[1]

1. The Order of the Referee in Bankruptcy directs a hearing to fix and determine the merits of the claim filed in bankruptcy by Cuneo against the bankrupt, and the

At the outset, I shall dispose of Cuneo's claim that the alleged release which it had received from the bankrupt on the eve of bankruptcy is a bar to assertion by the trustee of any rights released by that document. That is an argument addressed to the merits of the proceedings. It may be raised when the merits are tried. This Court has before it for ruling the propriety of the Referee's order sustaining *jurisdiction* in the Bankruptcy Court to determine a claim by the trustee against Cuneo and the jurisdictional question alone, not the merits, are to be here determined.

Furthermore, I shall make no disposition of that part of the trustee's argument which urges this Court to sustain jurisdiction over the counterclaim by reason of the appearances by Cuneo in various phases of the bankruptcy proceedings. It is not necessary to reach this question by reason of the disposition I shall make.

The facts briefly, upon which the counterclaim is asserted, are as follows: The bankrupt was engaged in the business of publishing magazines. Cuneo printed the magazines for the publisher, and was required to deliver them to The American News Company for distribution nationally. The trustee urges that, for one reason or another, Cuneo was unable to print the magazine according to specifications or to make the delivery required.[2] In any event, the trustee contends that the contract between the bankrupt and Cuneo was cancelled without cause by Cuneo and the bankrupt was required to arrange for the printing of its magazine by The Rumford Press. Cuneo, it is further claimed, induced Rumford not to print the bankrupt's magazines by threatening to sue Rumford for inducing the bankrupt to breach its contract with Cuneo. As a result, the bankrupt's magazines were not printed and the bankrupt was forced out of business, and into bankruptcy.

The bankrupt had filed a voluntary petition in bankruptcy on May 24, 1954. On June 9, 1954 Cuneo filed a claim against the bankrupt in the sum of $33,-821.50 for printing work allegedly done pursuant to its contract with the bankrupt. The trustee believing Cuneo's claim for printing work to be unfounded moved to expunge it and to recover an unstated amount against Cuneo as a result of the alleged inferior printing which the trustee contends caused the bankrupt's damage, as well as for other conduct already described which the trustee claims brought about the bankruptcy. Cuneo then moved before the referee to dismiss the trustee's petition for "lack of jurisdiction", the denial of which is being presently reviewed.

Cuneo's jurisdictional attack, in the main, is based on the fact that it is not engaged in business in this District, but maintains its office in Pennsylvania, and hence this Court has no jurisdiction over it. In opposition, the trustee argues that the filing of a claim in bankruptcy confers jurisdiction upon the Referee to determine a set-off or counterclaim by the bankrupt against the claimant, arising out of the same transaction.[3]

---

2. The particular provision of the Order to which Cuneo vociferously objects reads: "and to fix and determine the claim of the Trustee against Cuneo Eastern Press, Inc. and the amount, if any, due to the Trustee, for damages sustained by and caused to the bankrupt but [sic] the acts and conduct committed by and the damage caused to the bankrupt by the said Cuneo Eastern Press, Inc."

On this score, it is to be noted, that Cuneo contends that it had, pursuant to the contract, duly printed issues of the magazine between February 1953 and May 1954 and that as a result of some controversy with the bankrupt all of the differences were disposed of and mutual releases were exchanged on May 14, 1954, ten days before the petition in bankruptcy was filed.

3. The trustee also contends that the following conduct by Cuneo brought about a submission to the jurisdiction of this Court:

1. On June 8, 1954, at the First Meeting of Creditors, Cuneo appeared by Hughes, Hubbard, Blair & Reed, Esqs., by Harold L. Smith as counsel, and participated in the meeting.

It seems clear that the trustee's position must prevail. The question has been squarely raised and determined in a recent opinion in Columbia Foundry Co. v. Lochner, 4 Cir., 1950, 179 F.2d 630, 14 A.L.R.2d 1349. This was a proceeding in the bankruptcy of Liberty Motors & Engineering Corporation. The Columbia Foundry Company, a non-resident creditor, filed a claim against the estate of the bankrupt. Lochner, the Trustee in Bankruptcy, filed a counterclaim against the creditor. The District Court (Chesnut, J.) held that it had jurisdiction to enter an affirmative judgment in favor of the trustee on the counterclaim filed by him against the non-resident creditor. This holding was sustained on appeal, following a previous holding by the same court in Florance v. Kresge, 4 Cir., 1938, 93 F.2d 784, which, in turn, followed the principle laid down in Alexander v. Hillman, 1935, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192. Alexander had decided that in an equity receivership to wind up the business of a corporation and distribute its assets among the creditors and stockholders, where non-resident officers of the corporation, who were not parties to the original suit, come in as creditors and claim part of the assets, the Court has jurisdiction to entertain a counterclaim against them for assets of the corporation, alleged to have been fraudulently converted by them to their own use; and in such a case, the Court has jurisdiction not only of the subject matter, but also of the person and may grant affirmative relief. Judge Soper, writing for the court in Columbia, stated the rationale of its holding in these words:

"A case of this sort demonstrates the wisdom of the rule laid down in Florance v. Kresge, supra, and the improbability that Congress intended to restrict the use of counterclaims to defensive purposes only. Here the trustee is called upon to pay for goods sold to the bankrupt which, for the purposes of the argument, must be assumed to have been so defective as to cause the bankrupt a loss greatly in excess of the purchase price of the merchandise. The counterclaim relates to the very subject matter of the claim itself. It is conceded that the trustee may prove the counterclaim so as to defeat the claim and it follows that the creditor must produce the same evidence to save his claim as he would to defeat an affirmative judgment against him on the counterclaim. The inconvenience and expense of transporting witnesses and records from the claimant's home office to the bankruptcy court, which is stressed by

2. On June 9, 1954, at the Adjourned First Meeting of Creditors, Cuneo appeared by the same firm, and also, and in addition, by Dilworth, Paxon, Kalish & Green, Esqs., by James A. Sutton, and by Jas. Maxwell Fassett, and participated in the meeting.

3. On June 9, 1954, Cuneo filed a proof of claim against the bankrupt in the sum of $33,821.50.

4. On June 9, 1954, Cuneo filed a general notice of appearance by Jas. Maxwell Fassett, in which he was described as "attorney for Cuneo Eastern Press Inc."; a copy of the notice of appearance was served upon the attorney for the Trustee.

5. On June 15, 1954, Cuneo, by the Dilworth firm, and Mr. Fassett, appeared and participated in a hearing held on the Trustee's application to approve retention of counsel.

6. On June 23, 1954, at an Adjourned First Meeting of Creditors, Cuneo appeared by the two firms last mentioned, both noting their appearance as co-counsel for Cuneo, and one of the attorneys appearing on behalf of Cuneo cross-examined the president of the bankrupt corporation during the course of the latter's examination under Section 21, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 44, sub. a, by the attorney for the Trustee.

7. On July 6, 1954, Cuneo filed a lien against the bankrupt, asserting a claim to certain assets; a notice of lien was filed by an attorney described therein as "attorney for Cuneo Eastern Press Inc."

8. By affidavit sworn to July 26, 1954, Cuneo opposed the Trustee's application for the retention of counsel."

However, as already indicated, I shall dispose of this petition to review without considering this conduct by Cuneo.

the appellant, would be the same in either event; and this difficulty is unavoidable since it is essential that claims against an insolvent in bankruptcy as in an equity receivership must be handled by the court in charge of the debtor's estate." 179 F.2d at page 633.

Judge Soper pointed out that the Supreme Court in Alexander rejected the claim that the creditor's rights to a jury trial under the Seventh Amendment were being infringed. Columbia also rejected any contention that there is a distinction between a receivership in equity and a bankruptcy proceeding for the instant purposes. See also In re Solar Manufacturing Corp., 3 Cir., 1952, 200 F.2d 327; Chase National Bank of City of New York v. Lyford, 2 Cir., 1945, 147 F.2d 273, 276; In re Mercury Engineering Co., D.C.S.D.Cal.1945, 60 F.Supp. 786; In re Nathan, D.C.S.D.Cal.1951, 98 F. Supp. 686; National City Bank of New York v. O'Connell, 2 Cir., 1946, 155 F.2d 329. It is true that divergent views have been expressed as in Metz v. Knobel, 2 Cir., 1927, 21 F.2d 317, but this was prior to the decision by the Supreme Court in Alexander. Compare also Cline v. Kaplan, 1944, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97; Giffin v. Vought, 2 Cir., 1949, 175 F.2d 186; Kleid v. Ruthbell Coal Co., 2 Cir., 1942, 131 F.2d 372.

■■ General policy and analogy call for a finding here of implied consent that the bankruptcy court exercise summary jurisdiction to render an affirmative judgment on the counterclaim. It is the policy of the Bankruptcy Act to bring about quick and summary disposal of questions arising in the progress of the case. Indeed, the Bankruptcy Act provides:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." Title 11 U.S.C.A. § 108, sub. a.

■ In effect the Act declares a statutory policy to settle all related claims.[4] The same considerations of policy which supported the holding in Alexander also support a holding that a creditor by the filing of its claim gives the consent necessary to the Bankruptcy Court to adjudicate a counterclaim arising out of the subject matter of the creditor's claim.

If an action at law had been brought by Cuneo against Farrell, it could not be questioned that the counterclaim now asserted by the trustee, would be designated as a compulsory counterclaim under Fed.Rules Civ.Proc. 13(a), 28 U.S.C.A., being a claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." In United Artists Corp. v. Masterpiece Productions, Inc., 2 Cir., 221 F. 2d 213, the Court of Appeals of this Circuit has clearly evidenced an attitude favoring the procedural "interest of avoiding circuity and multiplicity of action" over jurisdictional objections if lack of jurisdiction is not dictated by controlling precedent or by compelling reasons of justice and policy. In United Artists, a counterclaim under F.R.C.P. 13 was held to be compulsory under the liberal "logical relationship [between the claim

4. U. S. v. Roth, 2 Cir., 1948, 164 F.2d 575, cited by Cuneo is distinguishable in that mutuality of debts for the purposes of a set-off and implied consent were lacking in that case because the creditor's claim was against the bankrupt's estate whereas the claim which the trustee sought to assert was to recover a preferential transfer. Therefore, the debts were not mutual since the trustee was standing in the shoes of the *bankrupt* as regards the creditor's claim but was standing in the shoes of a *creditor* as regards the preferential transfer. In the instant case, the debts are all mutual: the trustee is in his capacity as the bankrupt as regards both the threat-to-sue and the inferior printing claims. The trustee's power to void a preference arises only collaterally as to the latter claim—*i. e.* the trustee *in reply* to Cuneo's affirmative defense of release may seek to avoid the release as a preference.

and counterclaim]" test, and was permitted to be asserted, in a diversity action, against additional parties of citizenship identical with that of the defendant in that case (no diversity). The instant counterclaim would not only be classified as compulsory under the liberal logical relationship test but would be so classified under the much narrower "same evidence" test. Both the claim filed by Cuneo and the counterclaims asserted by the trustee arise out of the contract between Cuneo and the bankrupt. The very claim by Cuneo will present the issue of its performance under the contract. The same proof will be required in defending against Cuneo's claim as is necessary in the proof of the trustee's counterclaim.

In view of the foregoing, the petition to review is denied. Settle order.