**In the Matter of Peter W. GERMAIN, Debtor.**

**In the Matter of Ruth A. GERMAIN, Debtor.**

**Nos. 8385, 8418.**

United States District Court
S. D. California, Central Division.
Sept. 24, 1956.

4. General Admiralty Rule 31, 28 U.S.C.A.

Davis, Guerard & Barrett, Fresno, Cal., by James F. Wagner, Fresno, Cal., for debtors.

Kimble, Thomas, Snell, Jamison & Russel, Fresno, Cal., by George C. Coleman, Fresno, Cal., for Bianco Packing Co., Inc.

YANKWICH, Chief Judge.

Before us is the petition of Bianco Packing Company, Inc., to be referred to as "Bianco", or "petitioner on review", to review an Order of the Referee dated February 14, 1956, discharging property of the debtors from certain lien claimed by it, and determining the validity and extent of its claim.

The matter arose in a proceeding for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., instituted on May 5, 1955, by Peter W. Germain, a farmer. His wife, Ruth A. Germain, filed a similar petition on June 1, 1955. An Order of General Reference was made on May 7, 1955. On June 29, 1955, an Order was entered plac-

ing the debtors in charge of the business and authorizing them to continue in possession of their property and to operate the business. On the same day, an Order was entered authorizing the debtors in possession to sell their perishable crops and to account for the proceeds, subject to final determination of the lien rights of Bianco.

On July 1, 1955, the debtors filed a joint petition for stay of proceedings to enforce liens, to determine the claims against the debtors and asking for an Order to Show Cause why Bianco should not be enjoined from enforcing the claimed lien on their crops, and why the crops should not be sold free and clear of any lien, subject to such claims as may be determined to exist. An Order to Show Cause was issued upon the filing of the petition.

After hearing evidence, the Court, on February 14, 1956, entered an Order discharging the Bianco lien and determining the amount of indebtedness due on money lent to the debtors and secured by the crop mortgage and claimed advances thereon.

In arriving at this conclusion, the Referee determined that the promissory note held by Bianco in the sum of $1,520.-13, dated December 1, 1954, was null and void, and ordered the petitioner herein to deliver to the court the note and the crop mortgage given to secure it for cancellation. At the same time, the Referee found that petitioner had an unsecured claim of $272.20 against the debtors.

The Petition for Review attacks the Order and the Findings on which it was based. No shorthand reporter was present when the proceedings were had, none of the participants asking for a reporter. The testimony given thus comes to us in the form of a summary by the Referee in his Certificate. There is also in the record some correspondence between the debtors and the petitioner, statements of account, invoices, and other documents relating to the dispute as to the amount due on the promissory note which the crop mortgage secured.

The Findings of the Referee in Bankruptcy based on conflicting testimony cannot be set aside unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; General Orders 37, 47, 11 U.S.C.A. following section 53; Gold v. Gerson, 9 Cir., 1955, 225 F.2d 859; see, Yankwich, Impact of the Federal Rules of Civil Procedure on Bankruptcy, 1954, 42 Cal.L.Rev. 738, 743–744; ibid, 1954, 20 Journal National Association of Referees in Bankruptcy, 75, 76–77; and see, the writer's opinion In re Steinberg, D.C.Cal., 1956, 138 F.Supp. 462, 467.

We are satisfied from an examination of the record, the summary of the evidence made by the Referee and the documents in the record, that the Referee's decision is supported by substantial evidence. In the main, the basis for the rejection of a portion of the claim is that the alleged indebtedness was spurious, that the debtors *were not* indebted in the sum stated in the note at the time of its execution, and that Bianco

"by error, neglect and fraudulent methods of bookkeeping and accounting, has concealed these facts from the Debtors to their detriment."

The Findings are set forth in full in the margin.[1]

---

1. "Now, upon the said petition verified and filed July 1, 1955, and all proceedings had before me at the hearing, and all memoranda submitted to me, this Court finds: (1) That Bianco has obtained a purported lien against the Debtor by way of crop mortgage, the said security instrument being more particularly described hereinbelow; and (2) That said purported lien was given at the insistence of Bianco as security for an asserted sum of money, to-wit; One Thousand Five Hundred Twenty and 12/100 Dollars ($1,520.12), allegedly due Respondent from Debtors as the unpaid balance of advances by Respondent to Debtors, made for purposes of crop financing in 1954; and (3) That the indebtedness asserted by Bianco on the crop financing for 1954 is a composite of claims known to be false, incorrect, and misleading by Bianco; and (4) That Respondent, by error, neglect and fraudulent methods of bookkeeping and accounting, has concealed these facts from the

In his Certificate, the Referee has embodied a lengthy summary of the testimony of Peter W. Germain in which the debtor described in detail the errors committed by the accountants of the petitioner. These included excess charges, improper charges and failure to give proper credits. This testimony, if believed by the Referee, as it, no doubt, was, sustains his Findings. The petitioner joined issue upon these charges. They presented to the Referee, at the hearing, the testimony of Anthony Bianco, Jr. and Thayer Palmer, who gave their version of the transaction. We need not detail at length how this testimony differs from the other. In many respects, it corroborated Germain in the claim that disputes had arisen which culminated in an action in the Municipal Court and the levy of an attachment, to dismiss which the promissory note and crop mortgage were executed.

On the whole, there was a conflict as to the provenance and amount of the debt which it was the function of the Referee to resolve. As none of the participants in the hearing requested a reporter, there is no transcript available to contradict the summaries on which the determination of the Referee was based. And even if a fuller record were available from which a different conclusion might be reached by another trier of fact or by us, we are not permitted to substitute our judgment for that of the Referee when he *exercises a choice* between two divergent versions of a transaction. In re Steinberg, supra, 138 F.Supp. at page 470.

This conclusion would dispose of the matter were it not for two other questions raised by the petitioner on review. It is insisted that the Referee was without power to determine the invalidity of the note and chattel mortgage because in the petition for the Order the respondent herein *admitted* an indebtedness of $797.78. This position takes a very narrow attitude of the function of a Referee in a bankruptcy court governed by equitable principles, especially in a proceeding under Chapter XI. The petition in which the Order under review was made sought a determination of the total amount of the indebtedness.

[5, 6] The petitioner on review submitted the validity of its claim on the hearing on the Order to Show Cause. On such inquiry, the Referee could go be-

Debtors to their detriment; and (5) That said purported promissory note and crop mortgage are spurious, void and ineffectual for any purpose whatsoever, and (6) At the time when said instruments were executed, the Debtors were not in fact indebted to Bianco in the sum of One Thousand Five Hundred Twenty and 12/100 Dollars ($1,520.12), or in any sum at all; and (7) That instead, Bianco was indebted to the Debtors in the sum of Five Hundred Twenty-Five and 56/100 Dollars ($525.56), being the balance of moneys due them from the marketing and sale of the 1954 crops; and (8) That the Debtors received no consideration whatsoever for the execution and delivery to Bianco of the said purported promissory note and crop mortgage; and (9) That Respondent further advanced to the Debtors during the year 1955, the sum of Seven Hundred Ninety-Seven and 78/100 Dollars ($797.78); and (10) That at the time, the said 1955 advances were made, the Debtors were not indebted to Respondent; and (11) That the maximum amount of the future advances under the spurious crop mortgage was not stated in said instrument; and (12) That said 1955 advances were not made for the maintenance or preservation of the property, or any part thereof, described in said purported crop mortgage, but rather were advances ordinarily and customarily made in farming operations of the type conducted by the Debtors; and (12) That said advances of Seven Hundred Ninety-Seven and 78/100 Dollars ($797.-78) are subject to off-set in the sum of Five Hundred Twenty-Five and 56/100 Dollars ($525.56), being the sum due and owing the Debtors on the 1954 crops by Respondent; and (13) That the Debtors, after off-set as hereinabove stated, owe to the Bianco Packing Company, Inc. the sum of Two Hundred Seventy-Two and 22/100 Dollars ($272.22); and (14) That said sum due and owing to Bianco Packing Company, Inc. is an unsecured claim against the within estate of said Debtors; and (15) That due and proper notice of the hearing of said Petition and Order to Show Cause has been given by mail upon all parties in interest herein."

hind any admission in the petition as to what the actual indebtedness was. Bankruptcy Act, §§ 307, 308, 313, 11 U.S.C.A. §§ 707, 708, 713. In exercising the power to make an arrangement, the bankruptcy court (and the Referee where a reference to him is made) is given extensive rights to determine not only the claims, but the classes into which creditors are to be divided. Bankruptcy Act, §§ 351, 352, 11 U.S.C.A. §§ 751, 752. The power under these sections and those relating to the "Provisions of Arrangement", Bankruptcy Act, §§ 356, 357, 11 U.S.C.A. §§ 756, 757, which include the power to reject executory contracts, give the Referee the widest scope in determining *the nature* of a debt in an arrangement proceeding.

■■■ There were other creditors than Bianco. While debtors in possession, in some respects, act as trustee, they are not in a position, by admitting debts which *are not due,* to jeopard the rights of other creditors.

■■■ In any bankruptcy proceeding, only provable debts may be allowed. Bankruptcy Act, §§ 1(14), 63, 11 U.S. C.A. §§ 1(14), 103. The Referee, upon discovering that an amount less than claimed or admitted is due, *must so find.* Section 68, Subdivision a, of the Bankruptcy Act, 11 U.S.C.A. § 108, sub. a, applies to proceedings under Chapter XI. In re Potts, 6 Cir., 1944, 142 F.2d 883, 887. Under this section, in case of mutual debts and credits, an account must be stated, and the section specifically states

"one debt shall be set off against the other, and the balance only shall be allowed or paid." See, In re House of Gus Holder, D.C.N.J.1950, 91 F.Supp. 841, 843.

The filing of a claim in bankruptcy is a consent to the summary jurisdiction of the court to pass on its validity. The creditor

"thereby consents to the jurisdiction of the court to decide any defenses that may be lawfully interposed." In re Barnett, 2 Cir., 1926, 12 F.2d 73, 81.

And see, Collier on Bankruptcy, 14th ed., § 23.08(6), pp. 530–532; Alexander v. Hillman, 1935, 296 U.S. 222, 238–239, 56 S.Ct. 204, 80 L.Ed. 192 (*Equitable receivership);* Florance v. Kresge, 4 Cir., 1938, 93 F.2d 784, 786 (*bankruptcy);* In re House of Gus Holder, D.C.N.J.1950, 91 F.Supp. 841, 843 (*Chapter XI proceeding);* Columbia Foundry Co. v. Lochner, 4 Cir., 1949, 179 F.2d 630, 14 A.L.R.2d 1349 (*bankruptcy);* In re Nathan, D.C. Cal.1951, 98 F.Supp. 686, 690–691 *(bankruptcy);* In re Petroleum Conversion Corp., D.C.Del.1951, 99 F.Supp. 899, 905–906; same case on appeal, 3 Cir., 196 F.2d 728 (*bankruptcy);* In re Solar Manufacturing Corp., 3 Cir., 1952, 200 F.2d 327, 329–331 (*Chapter XI);* In re Ward, D.C. Colo.1955, 131 F.Supp. 387 (*bankruptcy).*

These cases and others given in the margin [2] illustrate the variety of instances in which the adjudication of a court of equity, whether a court of bankruptcy or not, was sustained when passing on

---

2. In Floro Realty & Investment Co. v. Steem Electric Corp., 8 Cir., 1942, 128 F.2d 338, 340, a lessor's assignee, in a proceeding relating to the lessee's reorganization under *Chapter X* of the Bankruptcy Act, claimed the right to the possession of the property. It was held that all questions relating to the matter, including the right to the return of a deposit to secure payment of rent were properly determined:

"Assuming without holding that the Bankruptcy Court, of its own motion, or on that of an interested party, would have been without jurisdiction in a summary action to order a return of the $3,000 deposit, Floro having submitted to the court

its claim for possession of the property involved, brought to the court for determination not only the questions which it deemed germane to its rights of possession but also all questions of defense which would be lawfully interposed, and cannot thereafter withdraw, but that court has jurisdiction thereupon to determine all controversies in relation to the claim thus submitted." At page 340.

A later case extends the principle so as to allow the question of preference to be inquired into summarily on the objection of the trustee to the allowance of a claim filed. Inter-State National Bank v. Luther, 10 Cir., 1955, 221 F.2d 382.

the validity of a debt, where the creditor *participated,* in its adjudication. This was the case even where (as in Alexander v. Hillman, supra) no process was originally served on him.

Here Bianco litigated its claim in response to the Order to Show Cause issued upon the petition to determine the amount due on the note secured by the crop mortgage. The Referee's inquiry could result in a finding that the entire debt or a portion of it was invalid and/or unsecured. In Gold v. Gerson, 9 Cir., 1955, 225 F.2d 859, in determining a petition for reclamation, the Referee (*in a proceeding under Chapter XI*) ruled that the property *did not belong* to the petitioner, because the conditional sales contract under which the property was claimed was insufficient in law, and the Referee chose to believe the bankrupt who asserted that there was *an absolute sale upon an open book account.*

In the matter before us, we have the same situation, except that the inquiry into validity originated *not* in a proceeding instituted by the creditor, but *in one instituted by the debtors.* In both instances (as in others referred to in the cases cited), the validity of the claim was put in issue before the Referee. This brings us to the contention that the Referee's decision in this case was, in reality, a finding of fraud, an issue which, it is argued, was not *specifically pleaded* in the petition.

The Federal Rules of Civil Procedure apply to bankruptcy. General Order 37. Under Rule 15(b), the Court may find the facts as they exist whether the issues were raised by the pleadings or not, provided evidence was received and the issue was tried "by express or implied consent of the parties". Rule 15 (b), F.R.C.P. Our Court of Appeals has held that this rule applies to fraud when the issue as to its existence is tried by the implied consent of the parties:

"Thus the issue of fraud, though not raised by the pleadings, was tried by implied consent of the parties. Accordingly, and properly, the court treated that issue as if it had been raised by the pleadings." United States v. Cushman, 9 Cir., 1943, 136 F.2d 815, 817.

And see, Southern Pacific Co. v. Libbey, 9 Cir., 1952, 199 F.2d 341, 347–348 (footnote 10)[3]

Great liberality obtains in pleading fraud in bankruptcy. The courts do not insist that there be conformance to the rigid demands in pleading fraud in civil actions charging it. Levenson v. B. & M. Furniture Co., 2 Cir., 1941, 120 F. 2d 1009, 1010; and see, the writer's article "The Impact of the Federal Rules of Civil Procedure on Bankruptcy", 1954, 23 Cal.L.Rev. 737, 748; and cases cited in Notes 55 and 56.

In California practice, fraud may be shown even under the broad allegations of a common count. B. F. Good-

3. There is nothing in the writer's opinion In re Mercury Engineering Co., D.C. Cal.1945, 60 F.Supp. 786, or in Freitag v. The Strand of Atlantic City, Inc., 3 Cir., 1953, 205 F.2d 778, cited by the petitioner, contrary to the views here expressed. In the Mercury Engineering case, I held that the Referee was right in refusing to determine certain off-sets and counterclaims summarily, and in relegating the parties to plenary actions. In Freitag v. The Strand, supra, the Court merely held that the particular issue was not before the court and was not actually litigated. This is evident from the following language of the opinion:
"It is not clear to us that the parties ever addressed themselves to that issue, particularly in view of the unequivocal statutory provision that the Certificate is 'conclusive' of the extinguishment of the lien. Certainly, there was no such clear framing of the issue and plain proof as is desirable on so grave a matter and necessary to dislodge the Certificate from the commanding position in which the statute has placed it." 205 F.2d at page 782.
In the matter before us, the Referee found that by reason of *the manner* in which the accounts were kept, and by actual concealment, the debtors *were induced to believe that they owed more than they actually did,* and executed the note and crop mortgage acting on such belief, which was not warranted by the facts.

rich Co. v. Naples, D.C.Cal.1954, 121 F. Supp. 345, 347–348. So here, the issue having been joined on the question of the amount due under the note and subject to the lien of the crop mortgage, the Referee was within his rights in determining the *exact* amount, even if, in doing so, he had to declare certain items fraudulent, and to invalidate the note and the crop mortgage. It follows that the Order of the Referee under review was proper, was within his power to make, and was made upon issues actually before him.

The Order of the Referee is hereby affirmed and his Findings are adopted as the Findings of the Court. Formal Order to be prepared by counsel for the Respondent.